**HASBRO INDUSTRIES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Court No. 84–1–00087.

United States Court of,
International Trade.

Oct. 25, 1988.

Sharretts, Paley, Carter & Blauvelt, P.C. (Peter J. Baskin, Ned H. Marshak and M. Barry Levy, New York City, of counsel), for plaintiff.

John R. Bolton, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, New York City (Saul Davis, and Susan Handler–Menahem, Commercial Litigation Branch), for defendant.

MEMORANDUM OPINION

WATSON, Judge:

This action involves the proper classification of plastic figures described as "G.I.

---

Joe Action Figures" and imported from Hong Kong during 1982 and 1983. The merchandise was classified as "other dolls" under Item 737.24 of the Tariff Schedules of the United States ("TSUS"), at various duty rates, depending upon the date of entry. Plaintiff claims that the importations are properly classifiable as "toy figures of animate objects" under Item A737.-40 of the TSUS, which, having met the requirements for duty-free treatment under the Generalized System of Preferences, ("GSP"), should be free of duty pursuant to General Headnote 3(c) of the TSUS.

A relatively full description of the imported articles is needed in order to understand the nature of the merchandise and its proper classification. All the figures are made of plastic, are approximately 3½ inches tall, and have the appearance of human beings dressed and equipped in a manner associated with actual or fictional warfare. They are noticeably lifelike and constructed in a manner which permits an impressive range of movement. The head turns from side to side, the arms are jointed at the shoulder and elbow and also have a rotational joint above the elbow and a rotational capacity in the shoulder. They can turn at the waist and also bend slightly in all directions from the waist. The legs have a wide range of movement at the hip and sufficient bending action in the knees to allow the figure to kneel or sit. The articulated joints maintain the position in which they are placed by manipulation.

The Court will further describe a number of representative figures. The figure named "Sergeant" has the appearance of a white male with blond hair, wearing khaki pants, brown boots and tan shirt. In molded relief, a knife is strapped to his left boot, a pistol is strapped to his right thigh and a bandolier, to which a grenade is attached, crosses his chest. As imported, the figure occupies a clear plastic blister which is mounted on a large card. The blister also contains separate plastic pieces representing binoculars, a helmet, an assault pack, and an M-32 sub-machine gun. These accessories are designed to fit on the figure or to be held in the hands, which, incidentally, by virtue of their shape and

material, have a gripping capability. The portion of the package card which is not occupied by the blister displays a dramatic portrait of the "Sergeant" in a heroic posture, holding the sub-machine gun in his left hand, the helmet in his right, and framed by an explosion of yellow and red behind him. At the top of the front of the card, appears the logo "G.I. JOE" in its characteristic form in which a star appears between the "I" and the "J" and strong red, white, and blue lines continue the horizontal lines of the letter "E." Under that is the designation "A Real American Hero." On the back of the card the upper half is devoted to 32 small reproductions of various "action figures" under the caption saying "Collect G.I. Joe Vehicles, Weapons, Figures & Cobra Command (The Enemy Army)." On the bottom half of the card's back is a simulation of a file card devoted to the "Sergeant" figure. It contains a picture of him from the waist up and the following informational material:

FIRST SERGEANT

Code Name: DUKE

File Name: Hauser, Conrad S. SN: RA213757793

Primary Military Specialty: Airborne Infantryman

Secondary Military Specialty: Artillery, Small-arms armorer

Birthplace: St. Louis, MO Grade: E–8 (Master Sergeant)

Duke was fluent in French, German, and English when he enlisted in 1967. Graduated top of his class at airborne school, Fort Benning. Opted for U.S. Army Special Language School. Specialized in Han Chinese and South East Asian dialects. Went Special Forces in 1969. Worked with tribesmen in the boonies of South Vietnam. Ran four different Special Forces schools. Turned down a commission in 1971. Commands by winning respect. Current assignment: Acting First Sergeant, G.I. Joe team.

Statement after declining commission. "They tell me that an officer's job is to impel others to take the risks—so that the officer survives to take the blame in the event of total catastrophe. With all

due respect, sir ... if that's what an officer does, I don't want any part of it."

Another figure is entitled "Heavy Machine Gunner" with the code name "Roadblock." This is a figure of a shaven-headed black male with mustache and goatee, wearing beige pants, black boots, and a brief camouflaged shirt which exposes the upper chest and arms. Molded on the figure are a knife strapped to the right leg, a pistol on the left thigh and a black belt with shoulder straps. The accessories for this figure include a backpack, an M–2X machine gun with tripod, an "ammo" box and a helmet. The portrait of the front of the card shows the figure springing forward with the heavy machine gun gripped in both hands against a background of the explosive white, yellow and red coloration. The file information for this figure reads as follows:

HEAVY MACHINE GUNNER
Code Name: ROADBLOCK
File Name: Hinton, Marvin F. SN: RA538203485
Primary Military Specialty: Infantry Heavy Weapons
Secondary Military Specialty: Cook
Birthplace: Biloxi, Mississippi Grade: E–4
Roadblock's dream was to be a gourmet chef. He was working as a bouncer to earn money to attend the Escoffier School in France when an army recruiter convinced him that the army could train him to be a chef. Roadblock joined but found army menus and preparation techniques to be appalling. Transferred to the infantry. Qualified expert: M–2 Browning .50 cal; Heavy Machine Gun; all Warsaw Pact Heavy MGs; M–16; M–1911A1 Auto Pistol.
"A .50 cal. Browning weighs 84 pounds. add fifty pounds for the ammo—that's about 134 pounds of steel generating 2930 f.p.s. in muzzle velocity at a cyclic rate of 550 r.p.m. Anybody who can handle that doesn't need a machine gun to keep me away!"

The next figure selected for description has the name "Medic." This is a black male dressed in a beige jumpsuit with a red cross showing on the right arm and the chest. Molded on the figure, a pistol, (possibly for shooting flares only), is strapped to the right thigh. This figure comes with a helmet, a stretcher, and a rescue flare launcher, a piece of equipment which has the look of a grenade launcher. The portrait next to the figure shows "Medic" against the explosive background of white, yellow and red, kneeling in readiness to launch a rescue flare. The file for "Medic" reads as follows:

MEDIC
Code Name: DOC
File Name: Greer, Carl W. SN: RA367221097
Primary Military Specialty: Medical Doctor
Secondary Military Specialty: Chaplain's Assistant
Birthplace: Concord, Mass. Grade: 0–3 (Captain)
Graduated from Harvard Medical School, completed residency at Johns Hopkins. Hoped for a guarantee of a G.I. Joe assignment upon enlistment. Told flatly that the Army made no such deals, Doc enlisted anyway and achieved his goal through ordinary channels. Graduated Airborne School, Mountaineering School, and Desert Training Unit.
An avowed pacifist, Doc believes that "the G.I. Joe team is the best we have. We send them into the worst situations imaginable because that's where we need them most. When the going gets rough, they need something more than a pill-roller. I'm their main man!"

The third figure selected for description is designated "Counter Intelligence." This is a white female with red hair, wearing what appears to be a beige, one-piece bathing suit, together with beige boots and gloves over black tights. Molded on the figure is a knife on the left thigh, what is possibly a small explosive device on the right thigh, a grenade on the left shoulder, a small pistol on the inside of the right forearm, and what appears to be two "throwing stars" (a type of weapon associated with Japanese "ninja") on the exterior of the left glove. The figure comes with a

"XK–1 Power Crossbow" accessory. The portrait next to the figure shows the figure against an explosive background of white, yellow and orange with the crossbow in the right arm. The information in the file for this figure reads as follows:

COUNTER INTELLIGENCE

Code Name: Scarlett

File Name: O'Hara, Shana M. SN: RA242967434

Primary Military Specialty: Intelligence

Secondary Military Specialty: CLASSIFIED

Birthplace: Atlanta, Georgia Grade: E–5

Scarlett's father and three brothers were martial arts instructors. She began her training at age 9 and was awarded her first black belt at age 15. Graduated: Advanced Infantry Training and Ranger School. Special Ed.: Covert Ops School; Marine Sniper School; Special Air Service School; Marine Tae Kwan Do Symposium; Qualified Expert: M–14; M–16; M–1911A1; M–79; M–3A1; M–700 (Remington Sniper Rifle); Mac–10; XK–1 Power Crossbow; Throwing Stars; Garotte; Ka–Bar.

"Scarlett is confident and resilient ... it's remarkable that a person so deadly can still retain a sense of humor."

The next figure is entitled "Tracker." This is a male of light coloration with black hair held by a headband and formed into two long braids, suggestive of the hair style of certain Native Americans. This figure is dressed in beige pants with a suggestion of leather fringe on the outside seams, a blue shirt and brown boots. The figure has a hunting knife on its shirt and another one on its left thigh. Its accessories include an arrow cassette pack, an auto-arrow launcher, a green belt from which a red loin cloth hangs in the front and back, and a small plastic model of an American eagle. The portrait on the front shows "Tracker" bending on one knee with the arrow launcher held in one hand against the explosive background of white, yellow and red. The file for this figure reads as follows:

TRACKER

Code Name: SPIRIT

File Name: Iron–Knife, Charlie SN: RA146231009

Primary Military Specialty: Infantry

Secondary Military Specialty: Social Services

Birthplace: Taos, New Mexico Grade: E–4

Spirit comes from a family so far below the poverty line that they never realized they were poor. Was a hunting guide through high school. Served in Southeast Asia, then as a civilian completed his education. Returned to the service for reasons inexplicable to anyone but a native American mystic warrior. Qualified expert: M–16; M–1911A1 Auto Pistol; Remington sniper rifle.

"Charlie is a Shaman, a medicine man. He's not a healer or a priest or a witchdoctor. There isn't any equivalent in our culture for what he is unless we had shrinks that could actually help people."

Representative of the "Enemy" figures are the following: The "Cobra Commander" is a figure dressed entirely in blue with black gloves and black shoes and a face concealed entirely by a silver visor. A knife is shown as strapped to the left thigh and the accessory "venom" laser pistol fits into a specially shaped recess on the back of the figure. The portrait on the front of the package shows the Cobra Commander holding the venom pistol in his right hand and gesturing towards the viewer with his left hand. The file material for Cobra Commander reads as follows:

COBRA COMMANDER

Code Name: ENEMY LEADER

File Name: CLASSIFIED

Primary Military Specialty: Intelligence

Secondary Military Specialty: Ordinance (experimental weaponry)

Birthplace: CLASSIFIED Grade: Commander–in–Chief

Absolute power! Total control of the world ... it's people, wealth, and resources—that's the objective of COBRA Commander. This fanatical leader rules with an iron fist. He demands total loyalty and allegiance. His main battle plan for world control, relies on revolution

and chaos. He personally led uprisings in the Middle East, Southeast Asia and other trouble spots. Responsible for kidnapping scientists, business men, and military leaders then forcing them to reveal their top level secrets.

"COBRA Commander is hatred and evil personified. Corrupt. A man without scruples. Probably the most dangerous man alive!"

The final figure to be described is a member of the enemy group named "Cobra Intelligence Officer." This is a white female with black hair and black horn-rimmed glasses, wearing what appears to be a form-fitting suit of black armor. A pistol is attached to the right thigh and the accessories are a backpack with a decorative relief of a hooded cobra, and a high-density laser rifle. The portrait on the front shows the figure holding the rifle in the right hand and making a fist with the left hand. The file for this figure reads as follows:

COBRA INTELLIGENCE OFFICER

Code Name: BARONESS

Primary Military Specialty: Intelligence

Secondary Military Specialty: Fixed Wing Pilot

Birthplace: Classified

The spoiled offspring of wealthy European aristocrats, the Baroness graduated from student radicalism into international terrorism and finally into the ranks of COBRA. She was severly burned during a COBRA night attack operation and has had extensive plastic surgery. Rumor has it that she is the only one who knows Destro's secret identity. Qualified expert: M–16; AK–47; RPG7; Uzi; H.I.S.S. tank operator. Her principal weakness is in the division of her loyalty between COBRA Commander and Destro. Her chief strength would seem to lie in her ability to play them against each other."

Examination of these exhibits as well as the remaining samples of the importations, which were equally distinctive, has led the Court to find that these figures come within the common meaning of the term "doll."

It is the opinion of the Court that the term "doll" as used in the Tariff Schedules of the United States, has a common meaning which is broad enough to cover all those distinctive representations of human figures with which children play. The most disinterested source for determining the common meaning of a tariff term such as "dolls" is that provided by lexicographic authorities. In this regard, the dictionaries referred to by the Court invariably define the word doll as a representation of a human being used as a child's plaything. This, in itself, is virtually decisive.

It is also clear that the judicial decisions interpreting the term "doll" as used in the tariff schedules, while they have not been able to arrive at a perfect definition of the term, have almost without exception given a broad scope to the term. In *United States v. Butler Bros.*, 180 F. 1005 (1910) the court adopted a definition of dolls as representational puppets, which definition included the fact that the representation was occasionally as a soldier. In *Lewis Wolf & Co., Inc. v. United States*, 15 Cust.Ct. 156, C.D. 963 (1945) the court expressed its opinion that the common meaning of the term dolls was sufficiently comprehensive to include all dolls, whether or not they were used as children's playthings. *See* also *United States v. Cody Mfg. Co., Inc. et al.*, 44 CCPA 67, 74 C.A.D. 639 (1957); *Janex Corp. v. United States*, 80 Cust.Ct. 146, 152, C.D. 4748 (1978); *Russ Berrie & Co., Inc. v. United States*, 76 Cust.Ct. 218, 225–226, C.D. 4659, 417 F.Supp. 1035 (1976); *Brechner Bros. v. United States*, 58 Cust.Ct. 272, 274, C.D. 2959 (1967). *Brechner Bros. v. United States*, 58 Cust.Ct. 272, 274, C.D. 2959 (1967).

Plaintiff argues generally that the case law does not establish an unvarying principle that all representations of human figures are dolls and further that these importation belong to a category of toy soldiers which are a type of article which does not come within the common meaning of the term doll. The first argument may be true but it does not benefit plaintiff because there are no cases in which *playthings* representing human being were held to be

outside the scope of the term "dolls." Thus in *M. Pressner & Co. v. United States*, 24 Cust.Ct. 77, C.D. 1211 (1950) when the court held that certain miniature football players were not properly classified as dolls, it did so on the extremely limited ground that the importations were worn by adults attending football games as badges or insignia indicating allegiance to some particular college or school team, and on the further dubious ground that they did not ornament the person of the wearer. In *S.S. Kresge Co. v. United States*, 25 Cust.Ct. 89 C.D. 1269 (1950) the court found that certain hand-painted paper mache figures representing Italian farmers and peasants would not be properly classifiable as "dolls" because the articles were permanently mounted on bases, were delicate and fragile and were used by adults for decoration of the house. A number of other cases in which figures of human beings happened to have been classified in provisions other than that for dolls proved nothing one way or the other because classification under the provision for dolls was not at issue in those cases. *See United States v. F.W. Woolworth*, 28 Ct.Cust. Appls. 196, C.A.D. 145 (1940); *Lewis Marx & Co., Inc. v. United States*, 65 Cust.Ct. 672, C.D. 4146 (1970); *Exhibit Sales Inc. v. United States*, 72 Cust.Ct. 119, C.D. 4512 (1974) and *Associated Hobby Mfrs. Inc. v. United States*, 67 Cust.Ct. 391, C.D. 4302 (1971) *aff'd* 60 CCPA 121, C.A.D. 1093, 475 F.2d 654 (1973).

This brings us to plaintiff's second argument that toy soldiers are not within the common meaning of dolls and that these "action figures" are the modern version of toy soldiers. The Court is of the opinion that, if indeed some toy soldiers are outside the ambit of "dolls", then it is only that traditional category of toy soldiers which are characterized by a predominant molded stiffness and which are sold and played with in mass quantities. Only in that way could they conceivably escape the broad reach of the term "doll." However, the individuality displayed by these importations, the degree of intimate and manipulative play which they invite as a result of their physical characteristics and mode of presentation, indicates to the Court that they are nothing at all like traditional toy soldiers.

The testimony offered at trial could not overcome the fundamental definition established by lexicographic common meaning and prior case law. Although it is clear that plaintiff does not use the word "doll" in the marketing of these figures, none of the plaintiff's witnesses could persuade the Court that this was a matter of basic definition. On the contrary, the evidence as a whole supports the conclusion that the emphasis on the term "action figure" is a conscious avoidance of the definitionally correct term "doll" and that when these articles are described in general publications in this society such as newspapers or magazines, or in specialized publications devoted to collectors of dolls, they are frequently referred to as "dolls."

In sum, the Court is of the opinion that these figures have been properly classified as "dolls" under Item 737.24 of the TSUS. Further, for what it is worth, the Court notes that this classification does not in any way detract from the respect which these figures deserve as representations of the human participants in the never-ending struggle between good and evil. Henceforth, each and every one of these figures must accept the fact that, for tariff purposes and by judicial decision, they must face the world as "real American dolls." Hopefully, they will meet this decision as to their tariff classification with courage and pride.

### JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now in conformity with said decision,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED: that plaintiff's claim is hereby denied and the merchandise which is the subject of this action shall remain classified under the tariff provision assigned by the defendant.