**HASBRO INDUSTRIES, INC.,**
**Plaintiff–Appellant,**

v.

**The UNITED STATES,**
**Defendant–Appellee.**

**No. 89–1202.**

United States Court of Appeals,
Federal Circuit.

July 12, 1989.

Peter Jay Baskin, of Sharretts, Paley, Carter & Blauvelt, New York City, for plaintiff-appellant. With him on the brief were M. Barry Levy and Ned H. Marshak, of Sharretts, Paley, Carter & Blauvelt, New York City.

Saul Davis, of the Commercial Litigation Branch, Dept. of Justice, New York City, argued for defendant-appellee. With him on the brief were John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and Joseph I. Liebman, Atty. in Charge.

Before NIES, MAYER and MICHEL, Circuit Judges.

MICHEL, Circuit Judge.

Hasbro Industries, Inc. appeals the decision of the Court of International Trade, 703 F.Supp. 941 (Ct. Int'l Trade 1988), which determined that "G.I. Joe Action Figures" are within the common meaning of "dolls" and were properly classified as such under Item 737.24 of the Tariff Schedules of the United States (TSUS). We affirm.

### Background

The United States Customs Service classified "G.I. Joe Action Figures" imported from Hong Kong during 1982 and 1983 as "other dolls" under Item 737.24 of the TSUS. Under this classification, depending on the date of entry, various rates of duty applied. Hasbro argues that these toy figures are excepted from duty because they are properly classifiable as "Toy figures of animate objects (except dolls): Not having a spring mechanism: Not stuffed: Other" under Item A737.40, TSUS, and thus free of duty pursuant to General Headnote 3(c),

TSUS. Hasbro contends that G.I. Joe is nothing more than a modern version of a traditional toy soldier.

G.I. Joe was originally introduced in 1964 as an 11½ inch figure. In 1976, Hasbro reduced G.I. Joe to 8½ inches and soon thereafter removed G.I. Joe from the market. When G.I. Joe was reintroduced in 1982, his Alice in Wonderland shrinkage had continued until he was only 3½ inches.

The articles in dispute are fully described in the opinion below:

All the figures are made of plastic, are approximately 3½ inches tall, and have the appearance of human beings dressed and equipped in a manner associated with actual or fictional warfare. They are noticeably *lifelike* and constructed in a manner which permits an impressive range of movement. The head turns from side to side, the arms are jointed at the shoulder and elbow and also have a rotational joint above the elbow and a rotational joint capacity in the shoulder. They can turn at the waist and also bend slightly in all directions from the waist. The legs have a wide range of movement at the hip and sufficient bending action in the knees to allow the figure to kneel or sit. The articulated joints maintain the position in which they are placed by manipulation. (Emphasis added.)

703 F.Supp. at 942.

Each figure is packaged singly in a large plastic blister mounted on a large card which contains specific biographical information for each figure. For example, First Sergeant, Code Name: Duke, has the following personnel card:

File Name: Hauser, Conrad S.

SN: RA213757793

Primary Military Specialty: Airborne Infantryman

Secondary Military Specialty: Artillery, Small-arms armorer

Birthplace: St. Louis, MO Grade: E–8 (Master Sergeant)

Duke was fluent in French, German, and English when he enlisted in 1967. Graduated top of his class at airborne school, Fort Benning. Opted for U.S. Army Special Language School. Specialized in

Han Chinese and South East Asian dialects. Went Special Forces in 1969. Worked with tribesmen in the boonies of South Vietnam. Ran four different Special Forces schools. Turned down a commission in 1971. Commands by winning respect. Current assignment: Acting First Sergeant, G.I. Joe team.

Statement after declining commission. "They tell me that an officer's job is to impel others to take the risks—so that the officer survives to take the blame in the event of total catastrophe. With all due respect, sir ... if that's what an officer does, I don't want any part of it."

In addition, each figure comes with its own specialized accessories. For example, First Sergeant comes with plastic pieces representing binoculars, a helmet, an assault pack, and an M–32 sub-machine gun.

Using lexicographic authorities and prior case law to establish the common meaning of the term "doll," the Court of International Trade determined that G.I. Joe action figures fell within that tariff term.

## OPINION

Although the common meaning of a tariff term is a question of law, *Childcraft Education Corp. v. United States*, 742 F.2d 1413, 1414 (Fed.Cir.1984) and therefore subject to de novo review, the determination whether a particular item fits within that meaning is a question of fact, *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 788 (Fed.Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988), subject to the clearly erroneous standard of review. *Id.* at 790–91. We note that "[i]t is incumbent upon the importer in a case such as this to overcome the presumption of correctness which attaches to a classification by the Customs Service, and the importer has the burden of proving that the classification is incorrect, though the importer need not always prove that its own proposed classification is correct." (Citation omitted.) *Childcraft*, 742 F.2d at 1414.

Item 737.24 of the TSUS is an *eo nomine* designation which includes all forms of the article. To determine the common meaning

of a tariff term like "doll," it is well established that the court "may consult dictionaries, scientific authorities, and other reliable information sources to ascertain that common meaning." *C.J. Tower & Sons of Buffalo, Inc. v. United States*, 673 F.2d 1268, 1271, 69 C.C.P.A. 128 (1982). The Court of International Trade referred to a general dictionary defining the word "doll" as a representation of a human being used as a child's plaything. While we conclude that this summary definition is not an all-inclusive definition for the term "doll," we determine that it is suitable for this case.

Earlier cases cited by the Court of International Trade indicate that the term "doll" has been interpreted broadly by the courts. *See United States v. Cody Manufacturing Co., Rohner Gehrig & Co.*, 44 CCPA 67, 73–74 (1957); *see generally Russ Berrie & Co. v. United States*, 417 F.Supp. 1035, 1039 (Cust.Ct.1976) ("Equally well established is the concept that a doll for tariff purposes is not confined to playthings for children but includes a wide range of other articles including but not limited to dolls for ornamentation such as boudoir dolls, souvenir or prize dolls, dolls for display or advertising purposes, and dolls sold as gag items, bar gadgets, adult novelties, etc."). Hasbro has given no compelling reason for this court or the Court of International Trade to alter this interpretation.

Given this broad common meaning of the term "doll," we next review whether the Court of International Trade clearly erred when it found that the G.I. Joe action figure fit within that term. We determine it did not. The evidence of record includes testimony (including expert testimony), magazine articles referring to G.I. Joe as a doll, letters from purchasers to Hasbro also referring to G.I. Joe as a doll, doll collector books, and the imported articles themselves. The record supports the Court of International Trade's finding.

Finally, we turn to Hasbro's argument that the long established practice of the Customs Service is to exclude traditional toy soldiers from the tariff provision for dolls. Assuming, arguendo, that traditional toy soldiers are treated differently than

dolls for tariff purposes, Hasbro's argument is not persuasive. As the Court of International Trade explained, the individual personality of each of these figures, as evidenced by his biographical file cards and physical characteristics inviting "intimate and manipulative" play, 703 F.Supp. at 946, indicates that these figures are not comparable to the identical, immobile faceless toy soldiers of yesteryear that were sold in groups of a dozen or so in bags. The G.I. Joe action figures do come within the common meaning of the term "doll" as set forth in lexicographic authorities and earlier judicial decisions.

Accordingly, although Hasbro has fought valiantly that these figures are not dolls, we are unable to agree. Even though G.I. Joe has lost this battle, hopefully he will not lose his courage for combat, despite being officially designated by the United States Customs Service as a "doll."

AFFIRMED.