**VISTA INTERNATIONAL PACKAGING CO., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 95–110.
Court No. 93–02–00074.**

United States Court of International Trade.

June 14, 1995.

Barnes, Richardson & Colburn (David O. Elliott, Sandra Liss Friedman and Alan Goggins), New York City, for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., Washington, DC; Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, New York City (Carla Garcia-Benitez and Mark S. Sochaczewsky), for defendant.

## OPINION

TSOUCALAS, Judge:

This action comes before the Court after trial *de novo* on October 5, 1994 and filing of parties' post trial briefs. Plaintiff, Vista International Packaging Co. ("Vista"), challenges the United States Customs Service's ("Customs") classification of plaintiff's fibrous sausage casings ("fibrous casings") as artificial guts (sausage casings) of cellulosic plastics materials pursuant to the Harmonized Tariff Schedule of the United States ("HTSUS") subsection 3917.10.10. The Court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988).

### Background

Fibrous casings, the merchandise at issue, are sausage casings imported by Vista. Casings are the vessel into which meats are stuffed to produce sausage and meat products. Fibrous casings are principally used for pepperoni, large size sausage and pre-sliced luncheon meats where cross dimensional stability and uniformity of size are critical. *Plaintiff's Post Trial Brief ("Plaintiff's Brief")* at 7. The casings are composed of two major components, fibrous paper and regenerated cellulose (plastic). Trial Transcript ("TT") at 7.

To manufacture fibrous casings, abaca paper, specially chosen for its strength, is formed into a cylinder. TT at 7, 100, 167. This cylinder is then brought down through a die and viscose is applied onto the surface of the paper. TT at 100, 167. The viscose is allowed to penetrate into the casing which is then put through a "regeneration" or "coagulation" bath, an acid bath that regenerates the cellulose. *Id.* at 100, 167. The casing is then put through a series of baths to clean, desulpher and plasticize it. *Id.* Finally, the casing is stretched, shaped, cut and dried. *Id.* at 169–70. Other ingredients may be added, as well. Glycerine, to plasticize or soften the casing, can be added to the semifinished casing. *Id.* at 167. Additives can be put on the casing, either on the outside or inside, to give the casing customer-related characteristics such as peelability or coloring. *Id.* See also *Defendant's Pretrial Memorandum of Law ("Defendant's Brief")* at 3–5.

On January 9, 1989, Customs issued Headquarters Ruling ("HQ") 082675 which classified fibrous sausage casings as sausage casings of cellulosic plastics materials pursuant to HTSUS subheading 3917.10.10. Plaintiff's Exhibit 3. Because the determination of whether a particular article fits within the meaning of a tariff term is one of fact, this Court may consider plaintiff's claim that fibrous sausage casings are other paper cut to size or shape or other articles of paper and, if appropriate, reject Customs' classification. *See Hasbro Indus., Inc. v. United States,* 879 F.2d 838, 840 (Fed.Cir.1989).

Customs classified the merchandise at issue pursuant to the following HTSUS heading:

| 3917 | Tubes, pipes and hoses and fittings therefor (for example, joints, elbows, flanges) of plastics: |
|---|---|

| 3917.10 | Artificial guts (sausage casings) of hardened protein or of cellulosic plastics materials: |
|---|---|

| 3917.10.10 | Of cellulosic plastics materials ......... 6.6% |
|---|---|

Plaintiff contends that Customs' classification is incorrect and believes the merchandise should be classified under the following HTSUS heading:

| 4823 | Other paper, paperboard, cellulose wadding and webs of cellulose fibers, cut to size or shape; other articles of paper pulp, paper, paperboard, cellulose wadding or webs of cellulose fibers: |
|---|---|

| 4823.90 | Other: |
|---|---|

| 4823.90.85 | Other ........... 5.3% |
|---|---|

*Discussion*

The Court notes that, pursuant to 28 U.S.C. § 2639(a)(1) (1988), tariff classifications made by Customs are presumed correct and the burden of proof is upon the party challenging the classification to prove that Customs' classification is incorrect. *See, e.g., Nippon Kogaku (USA), Inc. v. United States,* 69 CCPA 89, 92, 673 F.2d 380, 382 (1982). To determine whether the party challenging Customs' classification has overcome the statutory presumption of correctness, this Court must consider whether "the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878 (Fed.Cir. 1984).

Plaintiff argues that, because the viscose or regenerated cellulose component of fibrous casing completely impregnates the paper component and because the casing does not have a coating of plastic which can be removed or measured, the coated paper thickness test of HTSUS Chapter 48, Note 1(f) does not apply. As fibrous casings consist of two major components, Vista maintains the essential character test of HTSUS General Rule of Interpretation ("GRI") 3(b) should be applied. Plaintiff states the essential characteristic of the casing is its high cross dimensional strength which is attributable to the paper component. Thus, Vista asserts fibrous casings are properly dutiable in accordance with the paper component under HTSUS subheading 4823.90.85. Alternatively, Vista argues that, even if the paper component does not impart the essential character of the casing by itself, it is at least an equal contributor to the essential character. Thus, fibrous casings would be classifiable under the last heading in numerical order, again under HTSUS subheading 4823.90.85. *Plaintiff's Brief* at 15–32.

Defendant asserts that fibrous casings are properly classifiable under HTSUS subheading 3917.10.10 which refers to "artificial guts (sausage casings) ... of cellulosic plastics materials." Defendant contends the coated paper thickness test of HTSUS Chapter 48, Note 1(f) does indeed apply and precludes classification of the merchandise under HTSUS Chapter 48. Alternatively, pursuant to HTSUS GRI 3(b), defendant argues that subheading 3917.10.10 should be applied in this case because it is the regenerated cellulose which provides most of the desired characteristics sought in fibrous casings (the essential character of the merchandise). *Defendant's Brief* at 7–12.

HTSUS GRI 1 provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes."

HTSUS heading 3917 provides for "Tubes, pipes and hoses and fittings therefor (for example, joints, elbows, flanges), of plastics." Note 8 to Chapter 39 provides, in pertinent part, that "[f]or purposes of heading 3917, the expression '*tubes, pipes and hoses*' ... also includes sausage casings." "Plastics" is defined for the tariff schedule in Note 1 of Chapter 39 to include cellulose and its chemical derivatives.

HTSUS heading 4823 provides for other articles of paper. Although it is only persuasive authority, the Court notes that the Explanatory Notes for this heading state that the heading includes sausage casings.

As fibrous sausage casings are composed of paper and plastic, neither heading on its terms covers fibrous sausage casings.

Note 1(f) of Chapter 48 states:

1. This chapter does not cover:

    .     .     .     .     .

    (f) Paper-reinforced stratified sheeting of plastics, or one layer of paper or paperboard coated or covered with a layer of plastics, the latter constituting more than half the total thickness, or articles of such materials....

For the reasons set out below, this Court finds that the thickness test of Chapter 48 does not apply to fibrous sausage casings.

Note 1(f) is limited to paper coated or layered with plastic. The Court finds, however, that the acaba paper has been permeated or impregnated with plastic to produce fibrous sausage casings. The testimony of the three witnesses with fibrous casing experience was that the paper is impregnated with plastic, and not merely coated. TT at 19, 38–39, 76, 100, 188. The ruling of the Customs Service, HQ 082675, stated "[The regenerated cellulose] thoroughly permeates the paper." Plaintiff presented U.S. patent literature and marketing brochures from domestic manufacturers which indisputably support the proposition that the paper is impregnated or permeated with plastic and that there is negligible coating involved. *See, e.g.,* Plaintiff's Exhibit 1 at 70, 119.

In addition, plaintiff introduced data regarding the thickness of paper and plastic in the fibrous casings in accordance with Technical Association of the Pulp and Paper Industry of the United States ("TAPPI") internationally recognized standards for measuring the thickness of paper. TT at 55–60. After comparing the thickness of the untreated paper and the thickness of the finished fibrous casing, the data indicated an increase in thickness of approximately 10 to 20 percent. TT at 58. In accordance with TAPPI standards, it is not possible to separately measure the thickness of the plastic and the paper where the paper has been impregnated or permeated with plastic. TT at 60.

Finally, plaintiff introduced scanning electron microscope ("SEM") photographs of fibrous casings cross-sections which showed paper permeated with cellulose and negligible cellulose coating of the paper. TT at 33–36; Plaintiff's Exhibits 5A–5H. Defendant also entered SEM photographs into evidence, but these photographs were largely discredited at trial and the Court does not find them to be adequate representations of fibrous casings. TT at 146–50, 152, 154–55, 193–96; *see* TT at 28–32, 134–35.

As fibrous casings are not precluded from classification under Chapter 48 by the thickness test of Note 1(f), this Court turns to HTSUS GRI 3(b) to reach a decision in this case. HTSUS GRI 3 states, in relevant part:

3. When ... goods are, *prima facie,* classifiable under two or more headings, classification shall be effected as follows:

    (a) ... when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

    (b) Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives

them their essential character, insofar as this criterion is applicable.

For the reasons set out below, this Court finds that it is the paper component of fibrous sausage casings which gives the casings their "essential character."

High cross dimensional strength is the essential characteristic of fibrous casings. The witnesses with experience in fibrous casings agreed that it is the high cross dimensional strength which distinguishes them from casings purely of cellulose; which permits hanging, clipping, slicing and packaging in blister packs of the product; and which allows for precise size control and uniformity of diameter of the product even under heavy pressure from stuffing machinery. TT at 42, 63, 99–101, 108, 171, 187. They also agreed that pure cellulose casings do not possess the high cross dimensional strength of fibrous casings and therefore cannot supply the necessary size control and uniformity for the larger diameter products, such as pepperoni, bologna and presliced packaged luncheon meats that are exclusively produced using fibrous casings. TT at 41, 62, 98–100, 108, 187.

Plaintiff introduced examples of pepperoni and large diameter bologna products, stuffed both into pure cellulose casings and into fibrous casings, which confirmed the above-mentioned testimony. Plaintiff's Exhibits 8A–8F. The pure cellulose casing exhibits were misshapen or had split open and the fibrous casing exhibits were uniform in diameter and could be clipped. *Id.* Thus, the evidence introduced at trial indicated that high cross dimensional strength is the essential characteristic of fibrous casings.

This Court finds that it is the paper component which imparts high cross dimensional strength to fibrous sausage casings. The witnesses with fibrous casing experience all agreed that the paper component supplies cross dimensional strength to fibrous casings. TT at 51–52, 77–78, 111, 172, 187. Pure cellulose casings stretch like balloons because they lack this strength and rigidity which the paper imparts to fibrous casings. TT at 99, 172, 187. Further, it is the width of the paper which determines the width of the fibrous casing. TT at 189.

In light of these findings, defendant's contention that fibrous sausage casings are artificial guts (sausage casings) of cellulosic plastics materials pursuant to HTSUS subheading 3917.10.10 is without merit. This Court therefore finds that fibrous casings are paper and paperboard, and articles of paper pulp, of paper or of paperboard, pursuant to HTSUS subheading 4823.90.85.

*Conclusion*

For the foregoing reasons, this Court finds that plaintiff has overcome the presumption of correctness attached to Customs' classification of the subject merchandise under subheading 3917.10.10 of the HTSUS and has demonstrated that fibrous sausage casings are properly classifiable under subheading 4823.90.85 of the HTSUS. Customs is hereby ordered to reliquidate the subject merchandise under subheading 4823.90.85 and to refund all excess duties with interest as provided by law.

## JUDGMENT

This case, having been duly submitted for decision following trial *de novo,* and the Court, after due deliberation, having rendered a decision herein; now, therefore, in accordance with said decision

**IT IS HEREBY ORDERED** that the classification of the subject merchandise by the United States Customs Service under subheading 3917.10.10 of the HTSUS is reversed; and it is further

**ORDERED** that the United States Customs Service shall reliquidate the subject merchandise under subheading 4823.90.85 of the HTSUS and shall refund all excess duties with interest as provided by law.