**Slip Op. 00-60**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

_____

ROOSTER PRODUCTS, INC.,            **:**

      Plaintiff,            **:**

                            **Court No. 97-04-00586**

                     **:**       **Before: Barzilay, Judge**

          v.                  

                     **:**

UNITED STATES,             

                     **:**

      Defendant.

_____**:**

[On proper classification of leather tool holders imported from Mexico, Plaintiff's Motion for Summary Judgment denied, Defendant's Cross-Motion for Summary Judgment granted.]

                                         Decided: June 1, 2000.

Jenkens & Gilchrist, P.C. (Robert L. Soza, Jr. and G. Erick Rosemond) for Plaintiff.

David W. Ogden, Acting Assistant Attorney General; Joseph I. Liebman, Attorney-in-Charge, International Trade Field Office; Commercial Litigation Branch, Civil Division, Department of Justice (Mikki Graves Walser); George Brieger, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of counsel, for Defendant.

**MEMORANDUM**

**BARZILAY, JUDGE:**

**I. INTRODUCTION**

The issue before the Court in this case is whether leather tool holders, the imported merchandise, falls within subheading 4202.91.00 of the Harmonized Tariff Schedule of the United States ("HTSUS").[1] The Court exercises jurisdiction pursuant to 28 U.S.C. § 1581(a) (1994). For

---

[1] Subheading 4202 of the HTSUS provides for:
> Trunks, suitcases, vanity cases, attache cases, briefcases, school
> satchels, spectacle cases, binocular cases, camera cases, musical

the reasons that follow, the Court finds that classification under subheading 4202.91.00 HTSUS is

correct.

## II. BACKGROUND

The merchandise at issue is described by Plaintiff as an unbelted leather tool holder with a sleeve

at the top where the user may insert her own belt. *See* Pl's Mot. Supp. Summ. J. at 2 ("Pl.'s Mot."). An

examination of the pictures of the tool holder reveals that it has two large flared pockets, a couple of smaller

pockets, and two loops. *See id.* at Exh. A, Attachment 1. The pockets are designed to hold smaller tools

as well as nails, bolts, and similar small items. *See id.* at 3. The loops are designed for larger tools to hang

from, such as a hammer or a pair of pliers. *See id.* When the tool holder is used in its intended manner

it is worn like an apron around the individual's waist conforming to the contours of the individual's body.

*See id.*

## III. STANDARD OF REVIEW

The parties have cross moved for summary judgment, which is appropriate if "there is no genuine

issue as to any material fact . . . ." USCIT R. 56(c). The parties agree on the physical characteristics of

the imported merchandise, but dispute the classification. Based on a review of the undisputed facts, the

Court agrees that this case is appropriately resolved through summary

---

instrument cases, gun cases, holsters and similar containers; traveling
bags, toiletry bags, knapsacks and backpacks, handbags, shopping
bags, wallets, purses, map cases, cigarette cases, tobacco pouches,
tool bags, sports bags, bottle cases, jewelry boxes, powder cases,
cutlery cases, and similar containers of leather or of composition
leather, of sheeting of plastics, of textile materials, of vulcanized fiber or
of paperboard, or wholly or mainly covered with such materials or with
paper.

Subheading 4202.91.00 reads "Other: With outer surface of leather, of composition leather or of patent leather." Customs assessed the 1995 entries a 5.9% *ad valorem* rate, while assessing the 1996 entries a 6.2% *ad valorem* rate. The tariff provision otherwise is unchanged.

judgment.

Having decided no material facts are in dispute, the Court is then left with a purely legal question involving the meaning and scope of the tariff provision and whether it includes the imported merchandise. *See National Advanced Systems v. United States*, 26 F.3d 1107, 1109 (Fed. Cir. 1994). Although there is a statutory presumption of correctness for Customs decisions, 28 U.S.C. § 2639(a)(1) (1994), when the Court is presented with a question of law in a proper motion for summary judgment, that presumption does not apply. *See Universal Elecs., Inc. v. Unit*ed *States*, 112 F.3d 488, 492 (Fed. Cir. 1997); *Goodman Mfg., L.P. v. Unit*ed *States*, 69 F.3d 505, 508 (Fed. Cir. 1995) ("Because there was no factual dispute between the parties, the presumption of correctness is not relevant."). Accordingly, the Court proceeds to determine the correct classification of the merchandise.

## IV. DISCUSSION

Plaintiff argues that the proper classification of the tool holders is under subheading 4205.00.80 HTSUS, a basket provision providing for "Other articles of leather or of composition leather: . . . Other: . . . Other" with a free duty rate. Plaintiff contends that this basket provision is appropriate because it more accurately captures the tool holders since they are neither named nor like the exemplars listed in 4202.91.00 HTSUS. Defendant contends that the tool holder is a form of a tool bag, which is expressly provided for under 4202.91.00 HTSUS, and alternatively is *ejusdem generis* with the exemplars making classification therein appropriate.[2] Thus, unless the imported merchandise is neither provided for *eo nomine* nor can be considered a similar container by applying

---

[2] According to some dictionary definitions the merchandise at issue might also fall within the definition of holster. *See* AMERICAN HERITAGE DICTIONARY 617 (2d college ed. 1991) Because the Court finds the tool holders to be covered as a form of a tool bag, a closer analysis is not necessary.

the principle of *ejusdem generis*, classification in subheading 4205.00.80 is inappropriate because 4202.91.00 more specifically provides for tool holders.

In a classification case the court begins its analysis by applying the General Rules of Interpretation ("GRI"). GRI 1 states that "classification shall be determined according to the terms of the headings and any relative section or chapter notes . . . ." Plaintiff argues that because the tool holders are not specifically named, they do not fall within subheading 4202.91.00 HTSUS. An *eo nomine* provision without terms of limitation, however, includes all forms of the article in the absence of a contrary legislative intent. *See Lynteq, Inc. v. United States*, 976 F.2d 693, 697 (Fed. Cir. 1992) (citing *Hasbro Indus., Inc. v. United States*, 879 F.2d 838, 840 (Fed. Cir. 1989)). Furthermore, the common and commercial meaning of tariff terms are presumed to be the same. *See Rohm & Haas Co. v. United States*, 727 F.2d 1095, 1097 (Fed. Cir. 1984). While the common meaning of a tariff provision is a question of law, the commercial meaning is one of fact. *See id.* The party seeking to establish that the commercial meaning was intended by Congress bears the burden of proving that the designation is definite, general and uniform throughout the trade. *See id.* Plaintiff has failed to meet its burden of proof to overcome the presumption that the commercial meaning of tool bag is different from its common meaning.[3]

To ascertain the common meaning of a tariff term, the "court may rely upon its own understanding of terms used, and may consult standard lexicographic and scientific authorities . . . ." *Mita Copystar America v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994)

---

[3] At the hearing, Plaintiff argued that the Defendant had not submitted any competent evidence to contradict affidavit statements that the imported merchandise is not a tool bag. But, the well developed case law requires proof that Congress knew of and intended to use the word in its commercial meaning as well as that the proposed commercial meaning is definite, general, and uniform throughout the trade.

(citing *Brookside Veneers, Ltd. v. United States*, 847 F.2d 786, 789 (Fed Cir. 1988)).

The definition of tool is not in dispute, rather the focus of the parties' arguments is over the definition of "bag". Plaintiff offers the following definitions:

> "[A] nonrigid container made of fabric, paper, leather, etc. with an opening at the top that can be closed." [WEBSTER'S NEW WORLD DICTIONARY (1968)]
> "[A] container that may be closed for holding, storing or carrying something." [WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (1984)]

Defendant offers the following definitions:

> "[A] sac or pouch, usually of woven material, leather, or paper, used as a receptacle." [FUNK & WAGNALL'S NEW STANDARD DICTIONARY OF THE ENGLISH LANGUAGE 210 (1956)]
>
> . . . .
> "*[A] receptacle made of some flexible material closed in on all sides except at the top (where also it generally can be closed); a pouch, a small sack.*" [OXFORD ENGLISH DICTIONARY (2d Ed. on CD-ROM)]
>
> . . . .
> "[A] usu. [sic] flexible container that may be closed for holding, storing or carrying something . . . ." [WEBSTER'S NEW COLLEGIATE DICTIONARY 83 (1977)]

The Court has also found the following definitions:

> "A container in the form of a sack or pouch usually made from a flexible material such as paper or leather." [AMERICAN HERITAGE DICTIONARY 151 (2d College Ed. 1991).]
>
> "A container of flexible material, such as paper, plastic, or leather, that is used for carrying or storing items." ["Bag", *Dictionary.com* (visited May 4, 2000) <http://www.dictionary.com/cgi-bin/dict.pl?term=bag>]

It is clear to the Court based upon the definitions offered by the parties, its own research, and its understanding of the term, that a bag does not have to close or be capable of closing. The

defining characteristics of a bag are that it must be a container of flexible material with an opening at the top. While it is true that a bag often will be capable of closing, the Court is familiar with numerous types of bags that are not so designed. One such type of bag is seen frequently on the subways of New York City and is typically designed to carry books, newspapers, lunches and other items. It is has two handles and usually is made of some heavy type of cloth. Another bag of which the Court is aware that is not capable of being closed are the reusable textile or plastic shopping bags used by people who wish to avoid plastic or paper bags at the grocery store.

Examining Plaintiff's tool holder in light of the common meaning of tool bag as a flexible container with an opening at the top, it is apparent that the imported merchandise is a form of tool bag. Plaintiff admits that its tool holder is a flexible container. The belt area is comprised of several pouches with openings at the top into which various tools may be placed. Accordingly, the Court finds that the merchandise at issue is a form of tool bag composed of leather, and thus appropriately classified under subheading 4202.91.00 HTSUS.

In the alternative, even if the tool holders could not be considered a form of tool bag it would be necessary to examine whether they are similar to the exemplars expressly listed, thereby falling within subheading 4202.91.00 HTSUS. When a tariff provision lists a number of items and is followed by a general word or phrase, like the provision at issue's use of the phrase "similar containers," the rule of statutory construction called *ejusdem generis* applies. *See Avenues in Leather, Inc. v. United States*, 178 F.3d 1241, 1244 (Fed. Cir. 1999). Imported merchandise falls within the general phrase if it possesses the essential characteristics or purposes uniting the listed exemplars and does not have a more specific primary purpose that is inconsistent with the listed exemplars. *See id.* at 1244.

On two occasions the Federal Circuit has examined the provision at issue and held that the

unifying characteristics of the listed exemplars are storage, protection, organization, and carriage. *See id.* at 1244 (citing *Totes, Inc. v. United States*, 69 F.3d 495, 498 (Fed. Cir. 1995)). Plaintiff argues that the intended use of the tool holders is neither to protect nor to store but to provide immediate and open access. The Court finds, however, that the tool holders perform all of the functions of the listed exemplars, and in no event have a specific purpose inconsistent with them.[4]

Plaintiff argues that the tool holder is designed in a manner that prevents the storage or protection of its contents. If, for example, the tool holder is taken off the user's belt and inverted, the contents could easily spill. Further, there is no method of protecting the contents such as a locking device. Clearly, Plaintiff is correct, but that does not negate the tool holders' ability to protect and store. Plaintiff's argument is based on too narrow a definition of these terms. As Defendant aptly noted, the tool holder protects and stores items while it is in use by preventing its contents from falling to the ground and by holding its contents while work is performed. Another problem with Plaintiff's argument is that it overemphasizes the protection and storage functions of the listed exemplars.

Examining a briefcase, to take one example with which the Court is familiar, exposes the weakness in Plaintiff's argument. A briefcase is designed to store, protect, organize, and carry its contents. A briefcase does not, however, perform these functions for an indefinite duration. Rather, the materials in the briefcase are usually returned to file cabinets, desk drawers and the like, for longer and safer storage. Like the tool holders, the briefcase allows the user to place the necessary materials for the day's work inside to be returned later to some other storage container. Just because

---

[4] The Court's decision on this point renders it unnecessary to address whether all four characteristics must be present. *See, e.g., Jewelpak Corp. v. United States*, No. 94-04-00230, 2000 WL 382267, at *4 (CIT Apr. 13, 2000) (discussing whether a jewelry box must contain all four characteristics).

the user of the tool holder removes the items she needs for the day from a tool bag or some other longer

term storage device and later returns them does not place the tool holder outside the scope of the tariff

provision at issue. Accordingly, even if the tool holders were not classifiable *eo nomine* as a form of a tool

bag, they are still correctly classified through the application of *ejusdem generis* as similar containers.

## V. CONCLUSION

For the reasons discussed above, the Court holds that classification of the subject merchandise is

correct under subheading 4202.91.00 HTSUS. Judgment will enter accordingly.

Dated: _____                             _____
      New York, NY                                               Judith M. Barzilay
                                                                      Judge