**Slip Op. 01-9**

UNITED STATES COURT OF INTERNATIONAL TRADE

———————————————————
                                            :

TOY BIZ, INC.,
                                            :

                        *Plaintiff,*
                                            :

            v.                                        Court No. 96-10-02291
                                            :

UNITED STATES,
                                            :

                        *Defendant.*
                                            :
———————————————————

[Plaintiff's motion for summary judgment on issue of classification of certain action figures as toy "tin soldiers and the like" is denied, and Defendant's cross-motion is granted.]

                                                    Dated: January 26, 2001

        Singer and Singh (Sherry L. Singer and Indie K. Singh), for Plaintiff.

        Stuart E. Schiffer, Acting Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice; Mikki Graves Walser, Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice; Beth C. Brotman, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, of counsel; for Defendant.

**OPINION**

RIDGWAY, Judge:

        This case concerns the classification of certain X-Men and other Marvel action figures and dolls imported by Plaintiff, Toy Biz, Inc. ("Toy Biz"). The merchandise, imported from China through the ports of Seattle and Los Angles in 1993 and 1994, includes approximately 90 action figures from various Marvel Comics series (including the X-Men, Spider-Man, and the Fabulous Four), as well as a doll sold as "Jumpsie."

The figures at issue in this opinion are the "Steel Mutants" and "Silver Samurai."[1] The Steel Mutants are colorful two-and-three-quarters inch poseable figures made of die-cast metal, generally sold in pairs of two (an X-Men hero coupled with one of the hero's arch-enemies).[2] Silver Samurai is a poseable five-inch plastic X-Man figure clad in silver metallic armor.

This case has been designated a test case pursuant to USCIT Rule 84, and is before the Court on cross-motions for summary judgment filed under USCIT Rule 56 by Toy Biz and Defendant, the United States ("the Government").

## Background

The U.S. Customs Service classified the merchandise at issue under subheading 9502.10.40 of the Harmonized Tariff Schedule of the United States ("HTSUS"),[3] as "[d]olls representing only human beings and parts and accessories thereof," dutiable at 12% ad valorem.[4] Toy Biz contests

---

[1]The Steel Mutants at issue include the dueling duos in Assortment Nos. 49210 ("Spy Wolverine" vs. "Omega Red," and "Juggernaut vs. Cyclops") and 49220 ("Cable" vs. "Stryfe," "Professor X" vs. "Magneto," "Gambit" vs. "Bishop," and "Cyclops" vs. "Mr. Sinister"). Silver Samurai is included in Assortment Nos. 4900 I and 49605-II.

Although Toy Biz's briefs refer only to those Steel Mutants "blister-packed in two figure packages" (*i.e.*, the dueling duos listed immediately above), Toy Biz later put into issue two other assortments known as the "Kaybee Twin Packs," each of which includes three figures – two five-inch plastic figures and one Steel Mutant. Specifically, Assortment No. 49605-I includes a "Wolverine Tiger Stripe" Steel Mutant, and Assortment No. 49605-II includes a "Cyclops" Steel Mutant. The analysis which follows applies with equal force both to the Steel Mutants packaged as dueling duos and to the Steel Mutants in the Kaybee Twin Packs.

[2]The stated heights of all figures are approximations.

[3]19 U.S.C. § 1202 (1994).

[4]In its entirety, HTSUS subheading 9502.10.40 reads: "Dolls representing only human beings and parts and accessories thereof: Dolls whether or not dressed: Other: Not over 33 cm in height."

In addition, Customs separately classified the trading cards included with certain of the action figures under HTSUS subheading 4911.99.60, "Other printed matter, including printed pictures and

that classification, contending – for a variety of reasons –  that the action figures and the related items packaged with many of them should be classified not as dolls, but instead as toys or toy sets under various subheadings of HTSUS Chapter 9503 (dutiable at 6.8% ad valorem).[5]

Toy Biz's threshold – and primary – contention (disputed by the Government) was that all items other than Jumpsie (that is, all the action figures) instead should be classified under subheading 9503.49.00, as "[t]oys representing animals or non-human creatures (for example, robots and monsters)," because they represent creatures other than human beings.[6]  The parties' cross-motions for summary judgment on that issue were denied in Slip Op. 00-159, ____ CIT ____, 123 F. Supp. 2d 646 (2000).

As alternative grounds for summary judgment, Toy Biz here argues that, even if certain of the figures – specifically, the Steel Mutants and Silver Samurai – in fact represent humans, they nevertheless must be classified as toys (or toy sets) because they are the 21st Century equivalent of "tin soldiers and the like" and are therefore specifically excluded from classification as dolls. Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Memo") at 12-14; Memorandum of Plaintiff in Reply to Defendant's Memorandum in Opposition to Plaintiff's

---

photographs: Other: Other: Other: Printed on paper in whole or in part by a lithographic process," dutiable at 0.4% ad valorem.  Toy Biz contends that trading cards instead should be classified – together with the action figures and any weapons and equipment with which they are packaged – as toy sets under HTSUS subheading 9503.70.80.  Toy Biz argues in the alternative that, if the trading cards are classified separately from the action figures, the weapons and equipment must be classified separately as well (under HTSUS subheading 9503.90.60).

[5]Similarly, Toy Biz argues that Jumpsie should be classified as a "toy set" under HTSUS subheading 9503.70.80 (also dutiable at 6.8%), because – according to Toy Biz – the items packaged with the doll are not "accessories" within the meaning of HTSUS heading 9502.

[6]In its entirety, HTSUS subheading 9503.49.00 reads: "Other toys; reduced-size ('scale') models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof:  Toys representing animals or non-human creatures (for example, robots and monsters) and parts and accessories thereof: Other."

Motion for Summary Judgment and in Opposition to Defendant's Cross-Motion for Summary Judgment ("Plaintiff's Reply") at 17-18.  The Government disagrees.  Memorandum in Support of Defendant's Motion to Dismiss and In Opposition to Plaintiff's Motion for Summary Judgment and In Support of Defendant's Cross-Motion for Summary Judgment ("Defendant's Memo") at 26-27; Reply Memorandum to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment ("Defendant's Reply") at 17-18.

For the reasons set forth below, Toy Biz's motion for summary judgment on the issue is denied, and the Government's cross-motion is granted.

### Jurisdiction and Standard of Review

Jurisdiction is predicated on 28 U.S.C. § 1581(a) (1994).  Customs' classification decisions are subject to *de novo* review pursuant to 28 U.S.C. § 2640 (1994).

Under USCIT Rule 56(c), summary judgment is appropriate when the evidence before the Court "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Int'l Trading Co. v. United States, 24 CIT ____, ____, 110 F. Supp. 2d 977, 981 (2000).  Summary judgment is a favored procedural device "to secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327 (*quoting* Fed. R. Civ. P. 1); Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987).

### Discussion

Toy Biz rests its argument that the Steel Mutants and Silver Samurai are toys and not dolls on the Explanatory Notes to HTSUS heading 9502 (Dolls), which expressly exclude from the scope

of the heading "[t]in soldiers and the like."[7]  Toy Biz further emphasizes that "[t]in soldiers and the like" are expressly included within the scope of HTSUS heading 9503 (Other Toys), per the Explanatory Notes to that heading.[8]  *See* Plaintiff's Memo at 13; Plaintiff's Reply at 17.

According to Toy Biz, the Steel Mutants are "like" tin soldiers, because they are made of metal, because they are "warriors," and because (at least as to the dueling duos) they are sold in packages of two.[9]  Plaintiff's Memo at 12-13; Plaintiff's Reply at 17-18.  Toy Biz contends that Silver Samurai is "like" a tin soldier as well, because it is a warrior dressed in metallic armor.  Plaintiff's Memo at 13.

But, as the Government notes, the seminal Hasbro case is dispositive here.  *See* Defendant's Memo at 26-27 and Defendant's Reply at 17-18, *relying on*  Hasbro Indus., Inc. v. United States, 12 CIT 983, 703 F. Supp. 941 (1988), *aff'd*, 879 F.2d 838 (Fed. Cir. 1989).

Hasbro concerned the classification of a number of different three-and-one-half inch plastic G.I. Joe figures, including figures named "First Sergeant," "Heavy Machine Gunner," "Medic,"

---

[7]In its entirety, HTSUS heading 9502 reads: "Dolls representing only human beings and parts and accessories thereof."

[8]In its entirety, HTSUS heading 9503 reads: "Other toys; reduced-size ('scale') models and similar recreational models, working or not; puzzles of all kinds; parts and accessories thereof."

[9]Toy Biz points to the Explanatory Notes to HTSUS heading 9502, which provide that "Dolls are usually and of rubber, plastics, textile materials, wax, ceramics, wood, paperboard, papier mache or combinations of these materials."  Toy Biz argues that the die-cast metal Steel Mutants should therefore be classified as toys rather than dolls, because metal is "not one of the materials from which dolls are ordinarily made."  Plaintiff's Memo at 13.

But Toy Biz makes too much of the quoted note.  The list of materials in the note plainly is not exhaustive;  it is simply a list of the materials from which "[d]olls are *usually* made." (Emphasis supplied.)  Indeed, as the Government observes, the General Explanatory Notes to Chapter 95 provide that articles under that chapter – which would include dolls under HTSUS heading 9502 – may "be made of any material except natural or cultured pearls, precious or semi-precious stones (natural, synthetic or reconstructed), precious metal or metal clad with precious metal." Defendant's Reply at 18.  The Steel Mutants are not made of any of those excluded materials.

"Counter Intelligence," and "Tracker," as well as their enemies "Cobra Commander" and "Cobra Intelligence Officer," each of which had a distinctive physical appearance and personality profile. *See* 703 F. Supp. at 942-45. The Court of International Trade there classified the G.I. Joe figures as dolls, rejecting Hasbro's contention that the action figures were "the modern equivalent of toy soldiers":

> [I]f indeed some toy soldiers are outside the ambit of "dolls", then it is only that traditional category of toy soldiers which are characterized by a predominant molded stiffness and which are sold and played with in mass quantities.

703 F. Supp. at 946. The Court continued: "[T]he individuality displayed by these importations, [and] the degree of intimate and manipulative play which they invite as a result of their physical characteristics and mode of presentation, indicate[ ] to the Court that they are nothing at all like traditional toy soldiers." *Id*.

> The Court of Appeals upheld the decision of the Court of International Trade:
>
> Assuming, arguendo, that traditional toy soldiers are treated differently than dolls for tariff purposes, Hasbro's argument is not persuasive . . . . [T]he individual personality of each of these figures, as evidenced by his biographical file cards and physical characteristics inviting "intimate and manipulative play". . . indicates that these figures are not comparable to the identical, immobile faceless toy soldiers of yesteryear that were sold in groups of a dozen or so in bags.

879 F.2d 838, 840-41 (citation omitted).

Even if the case is not controlling, the <u>Hasbro</u> reasoning compels the same result here.[10]

---

[10]Toy Biz seeks to dismiss <u>Hasbro</u> as irrelevant, because that case concerned classification under the Tariff Schedules of the United States ("TSUS") rather than the HTSUS. Toy Biz contends that "the toy provisions were significantly changed" from the TSUS to the HTSUS. Plaintiff's Reply at 17. But Toy Biz's sole point is that the TSUS included nothing comparable to the HTSUS's Explanatory Note concerning "tin soldiers and the like." And even Toy Biz must concede that, notwithstanding the absence of such a provision, there was nevertheless "an established practice [under the TSUS] . . . [of] classifying toy soldiers outside of the doll provision." *Id.* Toy Biz's argument thus fails, because – despite differences in the verbiage of the TSUS vs. the HTSUS – it cannot show that there is any significant difference in the *application* of the two classification systems on this specific point.

Much like the "traditional toy soldiers" discussed in Hasbro, the "[t]in soldiers and the like" referenced in the Explanatory Notes to HTSUS headings 9502 and 9503 are figures such as the essentially identical, immobile, faceless toy soldiers generally sold in quantities which were popular among young boys in this country some years ago.  Such figures stand in stark contrast to Silver Samurai and the Steel Mutants at issue here.

Examination of the relevant samples and Toy Biz's 1994 catalog reveals that each of the Steel Mutants, and Silver Samurai, has a different name, a unique "personality," and a distinctive physical appearance.  *See* Toy Biz 1994 Catalog at 2 (Silver Samurai), 12, 13 (Steel Mutants). Indeed, on the back of each blister pack of two Steel Mutants is a brief profile of the X-Men hero/nemesis duo inside.[11]  Similarly, Silver Samurai is briefly profiled (together with Robot Wolverine) on the back of the package of Assortment No. 49605-II.[12]  Moreover, the individual physical characteristics of Silver Samurai and each of the Steel Mutants invite intimate and manipulative play.  They are not sold in mass quantities; nor, in the words of the Hasbro trial court, are they "characterized by a  predominant molded stiffness."  To the contrary, Silver Samurai and the Steel Mutants are poseable – as evidenced by the samples themselves, and as highlighted on the packaging of the figures and in Toy Biz's catalog.  *See* Toy Biz 1994 Catalog at 2 (Silver Samurai is "totally poseable" and "fully poseable"), 12, 13 (Steel Mutants are "poseable diecast metal action

---

[11]For example, the profile of Cable vs. Stryfe reads: "Sent into the future to save his life, the boy who would one day be Cable was trained all his life to battle Stryfe, the Chaos Bringer.  It came as a great shock, however, when Stryfe was revealed to be his own mad clone.  Now, both men have come back in time to our era, where their no-holds-barred war continues to this day!"

[12]Specifically, the "Battle Profile" of  Silver Samurai vs. Robot Wolverine (Albert) reads: "There is no one in the world that the Silver Samurai hates more than the X-Man Wolverine – and that hatred extends to Albert, the unstoppable robot made to resemble Wolverine!  When these two meet, it's a conflict of martial arts mastery and mutant energy powers vs. cybernetic strength and artificial claws!"

figures," capable of "[p]oseable action"). *See also*, *e.g.*, packaging of Professor X vs. Magneto, Gambit vs. Bishop, and Cyclops vs. Mr. Sinister (all part of Assortment No. 49220) (advertising "Poseable Figures" and "Poseable Action!" on the front of the blister pack, and "Poseable Diecast Action Figures" on the back).

In short, the Steel Mutants and Silver Samurai at issue here bear little resemblance to the "[t]in soldiers and the like" referred to in the Explanatory Notes to HTSUS headings 9502 and 9503.

### Conclusion

Toy Biz has failed to establish that the Steel Mutants and Silver Samurai are "like" tin soldiers and should accordingly be classified as toys (or toy sets), rather than dolls. Indeed, for the reasons discussed above, Toy Biz cannot do so. There is no dispute as to any material fact, and this matter is ripe for decision as a matter of law. Accordingly, Toy Biz's motion for summary judgment on the issue is denied, and the Government's cross-motion on the issue is granted.

A separate order will be entered accordingly.

                                     _____
                                     Delissa A. Ridgway
                                     Judge

Dated: January 26, 2001
       New York, New York