BETTER HOME PLASTICS
CORP., Plaintiff,

v.

UNITED STATES, Defendant.

Slip Op. 96–35.
Court No. 93–01–00065.

United States Court of
International Trade.

Feb. 9, 1996.

Fitch, King and Caffentzis, New York City (Peter J. Fitch and James Caffentzis), for plaintiff.

Frank W. Hunger, Assistant Attorney General, Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Saul Davis), Karen P. Binder, Office of Assistant Chief Counsel, International Trade Litiga-tion, United States Customs Service, of counsel, for defendant.

## OPINION AND JUDGMENT ORDER

DiCARLO, Chief Judge.

Plaintiff, Better Home Plastics Corp., challenges the classification of imported shower curtain sets by the United States Customs Service. Customs classified the merchandise under the provision for the set's outer textile curtain at a duty of 12.8% *ad valorem*. Section XI, Chapter 63, Subheading 6303.92.0000 of the Harmonized Tariff Schedule of the United States (1992) [hereinafter HTSUS]. Better Home Plastics asserts classification of the set is properly determined by the set's inner plastic liner, under Section VII, Chapter 39, Subheading 3924.90.1010, HTSUS (1992), at a duty of 3.36% *ad valorem*.

This action was submitted for decision on a stipulation of agreed facts, in lieu of trial, and upon the court's independent examination of the exhibits. The court exercises jurisdiction pursuant to 28 U.S.C. § 1581(a) (1988). Section 2639(a)(1), title 28, United States Code, presumes Customs' classification is correct.

## BACKGROUND

The shower curtain sets in question consist of an outer textile curtain, inner plastic magnetic liner, and plastic hooks. (Agreed Stmnt. of Facts at ¶¶ 2 & 19.) The plastic liner prevents water from escaping the shower enclosure while the shower is in use. (*Id.* at ¶¶ 8, 11.) The liner—which is opaque—also protects the textile curtain from mildew, and further serves to conceal the shower enclosure, a function the textile curtain cannot perform alone. (*Id.* at ¶¶ 13, 14.) The liner is color coordinated to match the outer curtain, and adds to the set's decorative appearance. (*Id.* at ¶ 10.)

The textile curtain is intended to be decorative, and does not retain water in the shower enclosure. (*Id.* at ¶¶ 7, 8, 15.) The curtain is also semi-transparent, permitting the color of the plastic liner to show when the curtain and the liner are drawn. (*Id.* at ¶¶ 7, 8, 15.)

The imported articles are at the "low end" of the shower curtain market. (*Id.* at ¶ 6.) Better Home Plastics sells the sets to budget stores at prices ranging from $5.00—$6.00, (*id.* at ¶ 5;) retailers resell the merchandise at prices from $9.00—$12.00. (*Id.*)

## DISCUSSION

The General Rules of Interpretation (GRI) govern the classification of the imported shower curtain sets under the HTSUS. General Rule of Interpretation 1 (GRI 1) establishes the general presumption for classification under the rules. GRI 1 provides that the headings and relative section or chapter notes determine the classification of the imported merchandise, so long as those headings or notes do not require otherwise. GRI 1, HTSUS.

General Rule of Interpretation 3 (GRI 3) governs where the merchandise at issue consists of more than one material or substance, such as a textile curtain and an inner plastic liner, as here. *See* GRI 2(b). GRI 3 mandates that, when "goods are, *prima facie*, classifiable under two or more headings," the court must classify the merchandise in question pursuant to the heading providing the most specific description. GRI 3(a), HTSUS. This is known as the rule of relative specificity. An exception to this rule exists.

When, however,

two or more headings each refer ... *to part only* of the items in a set put up for retail sale, those headings are to be regarded as equally specific ... even if one [heading provides] a more complete or precise description of the goods.

GRI 3(a), HTSUS (emphasis added). Accordingly, the rule of relative specificity does not apply when two of the headings each refer only to part of the items within the set.

Goods put up in sets for retail sale, which cannot be classified by reference to GRI 3(a), are classified by the "component which gives them their essential character." GRI 3(b), HTSUS [hereinafter the "essential character test"]. For goods which cannot be classified by reference to either GRI 3(a) or the exception pursuant to GRI 3(b), GRI 3(c) directs their classification "under the heading which

occurs last in numerical order among those which equally merit consideration." GRI 3(c), HTSUS. The parties contest how the court should apply these rules to the imported shower curtain sets in question.

### 1. The Rule of Relative Specificity

Customs classified the shower curtain sets on the basis of the outer textile curtain pursuant to subheading 6303.92.0000, HTSUS, which provides,

6303 Curtains (including drapes) and interior blinds; curtain or bed valances:

. . . .

  Other:

. . . .

6303.92 Of synthetic fibers.

Better Home Plastics contends the court must apply the essential character test, in classifying the applicable merchandise. Application of the test, Better Home Plastics asserts, would mandate classification of the set on the basis of its inner plastic liner pursuant to Subheading 3924.90.1010, HTSUS. This provision provides, in pertinent part,

3924 Tableware, kitchenware, other household articles and toilet articles, of plastics:

. . . .

3924.90 Other:

3924.90.10 Curtains and drapes, including panels and valances ...

3924.90.1010 Curtains and drapes.

Defendant argues the rule of relative specificity governs the classification of the imported merchandise. According to defendant, as both of the named headings fail to "refer" to different named materials contained in the imported sets, the essential character test would not apply.

Defendant further contends the court is limited only to comparisons among competing headings, and may not refer to the subheadings thereunder. Defendant therefore argues the rule of relative specificity applies. Application of the rule would support Customs' classification.

Although the court agrees that subheadings may not be referred to when comparing two competing headings, *see* Customs Cooperation Council, *Introducing the International Convention on the Harmonized Commodity Description and Coding System* 31 (1987) (finding that "in every case a product must first be classified to its appropriate [heading with] no account being taken of the terms of any lower-level subdivisions",) the court finds that the rule of relative specificity does not govern the classification of the curtain sets. The rule will not apply if (1) the headings are equally specific; or (2) two or more competing headings refer only to part of *the items within the set*, not as defendant asserts, a named material. This second exception is relevant here, as the imports in question are items in a set, put up for retail sale, not a mixture or composite good.

The applicable portions of the two competing headings refer to "[c]urtains," Heading 6303, HTSUS, and to "toilet articles, of plastics," Heading 3924, HTSUS. Heading 6303 covers the set's outer textile curtain. Heading 3924 contains the inner plastic liner.

Neither heading, however, encompasses all the items in the set. As Chapter 63 requires articles classified pursuant to its provisions to be made of textile fabric, "[c]urtains" would not encompass the plastic liner, nor the supporting plastic rings. *See* Note 1, Chapter 63, HTSUS. Similarly, Note 1 to Chapter 39, HTSUS, which encompasses the inner plastic liner, specifically precludes classification of imports regarded as textiles under its provisions, and thus would exclude the textile curtains. Accordingly, as the two competing headings each refer only to part of the items in the set, the rule of relative specificity does not apply, and the court looks to the rule's exception in the essential character test.

## 2. The Essential Character Test

Defendant contends the essential character of the curtains are embodied in the textile curtain. Defendant raises numerous arguments to support its position, particularly that (1) the plastic liner is replaceable at ⅛ to ¼ the price of the set; (2) the consumer purchases the set because of the decorative function of the outer curtain, and not for the protection afforded by the liner; and (3) the liner is only employed for the limited period that someone is utilizing the shower, whereas the decorative outer curtain is employed, at a minimum, when the bathroom is in use, and as much as 24 hours a day. Defendant also contends Better Home Plastics' invoice description supports Customs' classification. Pursuant to the invoice description, the set is sold as "Fabric Shower Curtain and Liner." (*See* Def.'s Br. at 18 & Ex. 6.) Therefore, defendant argues, this description serves as an admission that the curtain provides the essential character of the set.

The Explanatory Notes to the General Rules of Interpretation interpret essential character vaguely. *See* 1 *Harmonized Commodity Description and Encoding System, Explanatory Notes*, at GR3, VIII (providing "[t]he factor which determines essential character will vary as between different kinds of goods") [hereinafter *Explanatory Notes*]. Further, there are no reported cases defining essential character under the HTSUS. The predecessor to the HTSUS, the Tariff Schedule of the United States (TSUS), however, did utilize this concept. *See* General Headnote 9(f)(iii), TSUS (defining phrase "almost wholly of," as when "the essential character of the article is imparted by the named material.") Accordingly, the court looks to case law under the TSUS for guidance.

In *United States v. Canadian Vinyl Industries, Inc.*, 64 CCPA 97, C.A.D. 1189, 555 F.2d 806 (1977), the Court of Customs and Patent Appeals reviewed the classification of flexible sheets with a polyurethane skin on one side and nylon fabric on the other, used as imitation patent leather in the manufacture of shoes. The Court of International Trade's predecessor, the Customs Court, had upheld the importer's claim that the merchandise was properly classified according to the polyurethane skin, which imparted the imitation patent leather upon the sheets. In affirming the Customs Court, the Court of Customs and Patent Appeals found that the qualities imparted by the polyurethane skin were "indispensable," and therefore imparted the essential character of the merchandise. *Canadian Vinyl*, 64 CCPA at 103, C.A.D.

1189, 555 F.2d at 809–810. *See also United China & Glass v. United States,* 389 C.D. 3637, 293 F.Supp. 734, 737 (1968) (noting essential character is that attribute "which is indispensable to the structure, core or condition of the article, *i.e.,* what it is.")

Although the court agrees that the curtain in the imported set imparts a desirable decorative characteristic, nonetheless, like the polyurethane skin in *Canadian Vinyl,* it is the plastic liner that provides the *indispensable* property of preventing water from escaping the shower enclosure. The liner (1) prevents water from escaping when the shower is in use; (2) protects the fabric curtain from mildew and soap scum; and (3) conceals the shower and provides privacy when the shower is in use. (*See* Agreed Stmnt. of Facts at ¶¶ 11–14.) Further, the plastic liner can serve its intended function without the outer curtain and contributes to the overall appearance of the set. The outer curtain, in contrast, merely furthers the sets decorative aspect. The court therefore concludes the essential character of the set is derived from the plastic liner.

Defendant's other contentions are also unpersuasive. The manner in which the set is invoiced does not definitively determine which component provides the essential character of the set. *See* 2 Sturm, *Customs Law and Administration* § 57.6 (1993). The invoice description is intended to characterize the shipped item; it is not a declaration of the relative importance of its component parts. Further, while the decorative aspect of the curtain may be employed whenever the bathroom is in use, the function of the plastic liner while the shower is in use is not, as defendant contends, "limited," but rather is integral to the curtain's purpose in preventing water from escaping the shower enclosure. Finally, while the court takes into consideration the relative cost of the component parts, this point alone is not dispositive, nor very persuasive against the competing arguments.

### 3. Conflict with the Chapter Notes

Defendant also argues the chapter notes to Chapter 39 prohibit the proposed classification. As GRI 1 indicates, Customs may apply the General Rules of Interpretation only to the extent that the relevant section and chapter notes do not otherwise require. Note 1 to Chapter 39 provides "any reference to *'plastics'* . . . does not apply to materials regarded as textile materials of section XI." Section VII, Chapter 39, Note 1, HTSUS. In addition, Note 2(*l*) of the same chapter provides that Chapter 39 does not cover "[g]oods of section XI (textiles and textile articles)[.]" *Id.* at Note 2(*l*). Accordingly, under GRI 1, defendant argues, the prohibition contained in the chapter notes to Chapter 39 would take precedence over an application of GRI 3(b). Thus, classification on the basis of the plastic liner would be improper.

Defendant further argues that, because the exclusion of textile materials made of plastic is already accomplished by Note 1, Note 2(*l*). must refer to sets made up in part of textile materials, if it is to have any effect. According to defendant, basic principles of statutory construction mandate that the court must interpret each provision of a statute in such a manner so as not to render any provision superfluous.

The court is unpersuaded. Although the Explanatory Notes recognize that "headings cannot be extended to include goods which otherwise might fall there by reason of" the application of the General Rules of Interpretation, *Explanatory Notes,* at GR1(V), this limitation on the General Rules of Interpretation only applies "where the addition of another material or substance [would deprive] goods of *the character of goods of the kind mentioned in the heading,"* *id.* at GR2(XII) (emphasis added).

This is not the case here. The application of GRI 3(b) results in the classification of a *set* pursuant to the component that imparts the set's essential character, here the plastic liner. Under this fiction, the set is to be treated as if it consists wholly of the plastic curtain. Explanatory Note GR1(V) envisioned, and sought to prohibit, a different situation.

Explanatory Note GR1(V), as demonstrated by its example and reference of Chapter 31, was primarily concerned with certain ma-

terials or substances, such as the chemical compounds in Chapter 31, whose basic nature and qualities would be fundamentally altered by the addition of another substance. *See Explanatory Notes,* at GR2(XII). For instance, adding sodium (Na+) to chloride (Cl−) would create a salt, a substance with entirely different chemical and physical properties than the individual ions unmixed.

Classification of the textile curtain under the provision for plastic goods would not deprive the set of its "plastic" qualities. It is the essential character of the set—derived in part from the plastic's ability to repel water—that denotes the set's utility, purpose, and accordingly, character. Inclusion of the textile curtain within the classification for the plastic liner does little to change the qualities or the basic nature of the set in meeting this purpose.

Finally, the two chapter notes in Chapter 39 do not preclude classification of the set pursuant to the plastic liner. Classification of the set within Chapter 39 would not render either chapter note superfluous, which defendant argues would have mandated an alternative classification. Note 1 provides that the term "plastics" encompasses vulcanized fiber, but not *materials* regarded as textile materials of Section XI. Note 2(*l*) prevents classification of *goods* which properly belong within Section XI, such as *articles* made of plastic textile materials. Accordingly, as Note 1 regulates materials, while Note 2 regulates goods and articles, the two notes do not overlap and would not be rendered superfluous by a classification pursuant to the plastic liner.

The court finds that, when the indispensable function of keeping water inside the shower enclosure, along with the protective, privacy and decorative functions of the plastic liner are weighed against the decorative function and the relative cost of the outer curtain, it is the plastic liner that imparts the essential character upon the set. The court therefore does not reach defendant's argu-

ment that, in accordance with GRI 3(c), the set is classified under the subheading which appears last in numerical order.

## CONCLUSION

The court finds Better Home Plastics has overcome the presumption of correctness accorded to Customs, and the shower curtain sets were improperly classified under subheading 6303.92.0000, HTSUS. In addition, the court agrees with Better Home Plastics' proposed classification of the sets under subheading 3924.90.1010, HTSUS.

This decision is limited to its facts, *i.e.,* that the set at issue is at the low end of the shower curtain market. The court does not offer an opinion on the proper classification of sets targeted to a different market segment.

## JUDGMENT ORDER

This case having been submitted for decision and the court, after deliberation, having rendered a decision therein; now, in conformity with that decision, it is hereby

ORDERED that Customs' classification of the imported shower curtain sets under subheading 6303.92.0000, HTSUS, with an assessed duty rate of 12.8% *ad valorem,* be set aside; and it is further

ORDERED that Customs reliquidate the shower curtain sets under subheading 3924.90.1010, HTSUS, with an assessed duty rate of 3.36% *ad valorem;* and it is further

ORDERED that Customs refund all excess duties paid with interest as provided by law; and it is further

ORDERED that this action is dismissed.