**Slip Op. 02-76**

# UNITED STATES COURT OF INTERNATIONAL TRADE

_____
:

TOY BIZ, INC.,

:

*Plaintiff,*

:

v.                              Court No. 96-10-02291

:

UNITED STATES,

:

*Defendant.*

:

_____
:

[Plaintiff's motion for partial summary judgment denied, Defendant's cross-motion for partial summary judgment granted in part and denied in part.]

Decided: July 30, 2002

Singer & Singh, (Sherry L. Singer and Indie K. Singh), for Plaintiff.

Robert D. McCallum, Jr., Assistant Attorney General; John J. Mahon, Acting Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Mikki Graves Walser); Beth C. Brotman, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, Of Counsel; for Defendant.

## OPINION

RIDGWAY, Judge:

This action involves the tariff classification of dozens of action figures from various Marvel Comics series (including the X-Men, Spider-Man, and the Fantastic Four), as well as a doll sold as "Jumpsie." Plaintiff Toy Biz, Inc. ("Toy Biz") imported the merchandise from China, through the ports of Seattle and Los Angeles, in 1993 and 1994. The United States Customs Service

("Customs") classified the merchandise as "[d]olls representing only human beings and parts and accessories thereof," under subheading 9502.10.40 of the Harmonized Tariff Schedule of the United States ("HTSUS") (1993 and 1994),[1] and assessed duties at the rate of 12% *ad valorem*.[2] Toy Biz contests that classification.

The goods at issue in this opinion are the "X-Men Projectors" (Assortment No. 49110).[3] Toy Biz here contends that – even if the specific X-Men figures which house the projector mechanisms represent humans, and thus would alone be classifiable as "dolls" – the existence of the projector feature and the film disks packaged with the Projectors justify their classification as "other toys" under subheading 9503.90.60, HTSUS, or as "toy sets" under subheading 9503.70.80, HTSUS (both

---

[1]At the time the Projectors were imported, subheading 9502.10.40, in its entirety, covered "[d]olls representing only human beings and parts and accessories thereof: [d]olls, whether or not dressed: [o]ther: [n]ot over 33 cm in height." HTSUS, subheading 9502.10.40. The subheading numbers at the time of importation are used throughout this opinion.

[2]Certain action figures were packaged with "Official Marvel Universe Trading Cards," which Customs separately classified as "[o]ther printed matter, including printed pictures and photographs" under subheading 4911.99.60, dutiable at 0.4% *ad valorem*. *See* HQ 957636 (Oct. 11, 1995); HQ 957688 (Oct. 11, 1995).

[3]In Toy Biz, Inc. v. United States ("Toy Biz I"), 24 CIT __, 123 F. Supp. 2d 646 (2000), the Court denied the parties' cross-motions for partial summary judgment on the classification of the action figures as "dolls" (under heading 9502) or "toys" (under heading 9503) based on their "human" vs. "non-human" characteristics. Toy Biz's motion for partial summary judgment seeking classification of the "X-Men Steel Mutants" (Assortment Nos. 49210 and 49220) and "Silver Samurai" (Assortment Nos. 4900 I and 49605-II) as toy "tin soldiers and the like" under heading 9503 was denied, and the Government's cross-motion on the same issue was granted, in Toy Biz, Inc. v. United States, 25 CIT ___, ___, 132 F. Supp. 2d 17, 18 (2001) ("Toy Biz II"). *See also* Toy Biz II, 25 CIT at ___, 132 F. Supp. 2d at 18 (noting that "the analysis [of Toy Biz II] applies with equal force both to the Steel Mutants packaged as dueling duos and to the Steel Mutants in the ["Kay-Bee Collectors Edition X-Men Special Metallic Edition" (Assortment Nos. 49605-I and 49605-II)]").

dutiable at 6.8% *ad valorem*).[4]  *See* Complaint ¶ 30; Memorandum In Support of Plaintiff's Motion For Summary Judgment ("Plaintiff's Brief") at 8-12; Memorandum of Plaintiff Toy Biz, Inc. In Reply to Defendant's Memorandum In Opposition to Plaintiff's Motion For Summary Judgment and In Opposition to Defendant's Cross-Motion For Summary Judgment ("Plaintiff's Reply Brief") at 14-17.

This action has been designated a test case pursuant to USCIT Rule 84, and is before the Court on cross-motions for summary judgment.  Jurisdiction is predicated on 28 U.S.C. § 1581(a) (1994).  Customs' classification decisions are subject to *de novo* review pursuant to 28 U.S.C. § 2640 (1994).

For the reasons set forth herein, the Court denies the parties' cross-motions for partial summary judgment on the classification of the Projectors as "other toys" vs. "dolls" based on the existence of the projector mechanism or feature.  As explained below, Customs properly ruled that the Projectors are composite goods to be classified pursuant to General Rule of Interpretation ("GRI") 3(b).  However, the record before the Court is not sufficient at this time to permit a determination as to the "essential character" of the Projectors, as required by GRI 3(b).

The Court further finds, as discussed below, that the film disks packaged with the Projectors do not justify their classification as "toy sets."  Accordingly, Toy Biz's motion for partial summary judgment on that issue is denied, and the Government's cross-motion is granted.

---

[4]In its entirety, subheading 9503.90.60 covered "[o]ther toys; reduced-size ("scale") models and similar recreational models, working or not; puzzles of all kinds; and accessories thereof: [o]ther: [o]ther: [o]ther toys (except models), not having a spring mechanism." HTSUS, subheading 9503.90.60. Similarly, subheading 9503.70.80, in its entirety, covered "[o]ther toys; . . . [o]ther toys, put up in sets or outfits, and parts and accessories thereof: [o]ther: [o]ther." HTSUS, subheading 9503.70.80.

## I. __Background__

The "X-Men Projectors" at issue are colorful, poseable plastic action figures – specifically,

"Cyclops," "Magneto," and "Wolverine" – each of which stands approximately seven-and-one-half

inches tall, and has a built-in miniature slide projector mechanism housed in a cavity in its upper

torso.[5]  The projector mechanism consists of a small light bulb (powered by two AAA batteries,

---

[5]The Projectors at issue are three of the five items in Assortment 49110.  Because samples of the "Wolverine," "Magneto" and "Cyclops" Projectors were not available, Toy Biz instead submitted samples of a "Bishop" Projector and a "Dr. Octopus" Projector.

Several of Toy Biz's submissions mistakenly refer to the "Hobgoblin" Projector – one of the "Spider-Man Projectors" (Assortment No. 47220). *See*, *e.g.*, Plaintiff's Statement of Material Facts For Which There Is No Issue To Be Tried ("Plaintiff's Statement of Material Facts") ¶¶ 70-71; Plaintiff's Brief at 8, App. A at 12; Plaintiff's Reply Brief at 14. *See also* Defendant's Response to Plaintiff's Statement of Material Facts For Which There Exists No Issue To Be Tried ("Defendant's Response to Plaintiff's Statement of Material Facts") ¶¶ 70-71.  Similarly, Toy Biz's Complaint referred to Projectors in Assortment Nos. 47220,  48130 and 48210, as well as Assortment No. 49110. *See* Complaint ¶ 25.  However, the parties now agree that the "Wolverine," "Magneto" and "Cyclops" Projectors of Assortment 49110 are the only Projectors at issue in this action. *See generally* Stipulation (filed Oct. 19, 2000) (submitted under cover of Defendant's Consent Motion to File Its Response to Plaintiff's Complaint Out of Time [sic; Consent Motion to File Stipulation Out of Time]).

In light of such errors and discrepancies in the parties' submissions, as well as the large number of items involved, the parties entered into a Stipulation identifying all items at issue in this action and superseding all prior statements on the subject.  The Stipulation is annotated to reflect the parties' agreement "as to the evidence (samples, photographs and catalogs) to be considered in ruling on the pending motions for summary judgment." *See* Toy Biz I, 24 CIT at ____, 123 F. Supp. 2d at 646 n.1.

Since the Stipulation was reached, it has been clarified, and superseded in part, by several more recent developments. *See* Letter from Counsel for Toy Biz (Oct. 23, 2000) (noting that Stipulation references to "Robin Wolverine" should read "Robot Wolverine"); Affidavit of JoAnn E. McLaughlin (Oct. 23, 2000), *filed with* Plaintiff's Memorandum in Opposition to Defendant's Motion *In Limine* (same); Notice from Counsel for Toy Biz (Oct. 20, 2000) (noting submission of additional samples, as listed).  In addition, Toy Biz has "abandoned its claims with regard to all of

which are not included) behind a small lens through which images are projected. The lens of the projector protrudes markedly from the figure's chest. Packaged with each Projector are three different, interchangeable film "action disks," each of which consists of multiple "still" frames (slides) of various action scenes (resembling frames of a comic strip). *See* Sample "Bishop" and "Dr. Octopus" Projectors; Plaintiff's Brief, App. A at 10; Toy Biz 1994 Catalog at 14-15; Toy Biz 1995 Catalog at 13.

A button on the back of the Projector figure permits the user to turn on the projector's light bulb and to project one of the various images on the film disk onto any surface in front of the figure. Turning a knob on the back of the figure advances the film disk to another "frame," changing the projected image. Twisting the lens on the front of the figure focuses the image.

In classifying the "X-Men Projectors," Customs determined that each was "a composite article (consisting of a figure and a projector) with accessories (consisting of three film disks)." *See* HQ 957636 (Oct. 11, 1995); HQ 957688 (Oct. 11, 1995). Applying GRI 3(b), Customs further determined that "[e]ach article's essential character is imparted by the doll or toy animal/creature component." *Id*. Customs therefore classified the Projectors here at issue as "[d]olls representing only human beings" under subheading 9502.10.40, HTSUS. *Id.*

_____

the figures in Assortment 4810F," and the Government has agreed to the classification of "Beast," "Robot Wolverine," "Cameron Hodge," and "Vulture" as "[t]oys representing animals or non-human creatures" under subheading 9503.49.00, and "Bonebreaker" as "[o]ther toys" under subheading 9503.90.00. *See* Declaration of Alice Wong ¶ 3 (April 5, 2001). *See also* Affidavit of JoAnn E. McLaughlin (May 24, 2001).

## II. **Standard of Review**

Under USCIT Rule 56, summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to [ ] judgment as a matter of law." USCIT R. 56(c). Customs' classification decisions are reviewed through a two-step analysis – first construing the relevant tariff headings, then determining under which of those headings the merchandise at issue is properly classified. Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (*citing* Universal Elecs., Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997) ).

Interpretation of the relevant tariff headings is a question of law, while application of the terms to the merchandise is a question of fact. *See id.* Summary judgment is thus appropriate where the nature of the merchandise is not in question, and the sole issue is its proper classification. *See id.* (it is "clear that summary judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is)" (citation omitted).

On the other hand, "summary proceedings are not intended to substitute for trial when it is indeed necessary to find material facts." Scripps Clinic & Research Found. v. Genentech, Inc., 927 F.2d 1565, 1570 (Fed. Cir. 1991) (*citing* Meyers v. Brooks Shoe, Inc., 912 F.2d 1459, 1461 (Fed. Cir. 1990) ). Thus, it remains a function of the court to "determine whether there are any factual disputes that are material to the resolution of the action. The court may not resolve or try factual issues on a motion for summary judgment." Sea-Land Service, Inc. v. United States, 23 CIT 679, 684, 69 F. Supp. 2d 1371, 1375 (1999) (*quoting* Phone-Mate, Inc. v. United States, 12 CIT 575, 577, 690 F. Supp. 1048, 1050 (1988) ). *See also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249

(1986) (on summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"). Accordingly, summary judgment must be denied where there is a "dispute about a fact such that a reasonable trier of fact could return a verdict against the movant." Ugg Int'l, Inc. v. United States, 17 CIT 79, 83, 813 F. Supp. 848, 852 (1993) (*quoting* Pfaff Am. Sales Corp. v. United States, 16 CIT 1073, 1075 (1992) ).

On review, Customs' classification decisions are afforded a measure of deference proportional to their power to persuade, in accordance with the principles set forth in Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). *See* United States v. Mead Corp., 533 U.S. 218, 235 (2001); Mead Corp. v. United States, 283 F.3d 1342, 1346 (Fed. Cir. 2002).

### III. Analysis

The General Rules of Interpretation ("GRIs") provide a framework for the classification of merchandise under the HTSUS, and are considered statutory provisions of law for all purposes. *See* Orlando Food Corp. v. United States, 140 F.3d 1437, 1439 (Fed. Cir. 1998). The Harmonized Commodity Description and Coding System: Explanatory Notes (1st ed. 1986) ("Explanatory Notes") function as an interpretative supplement to the HTSUS. While the Explanatory Notes "do not constitute controlling legislative history," they "are intended to clarify the scope of HTSUS subheadings and offer guidance in interpreting its subheadings." Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994) (*citing* Lynteq, Inc. v. United States, 976 F.2d 693, 699 (Fed. Cir. 1992)).

Most goods are classified pursuant to GRI 1, which provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions [Rules 2 through 6]." GRI 1. According to the Explanatory Notes, GRI 1 is "intended to make it quite clear that the terms of a heading and any relative Section or Chapter Notes are paramount, i.e., they are the first consideration in determining classification." Explanatory Notes at GRI 1(V). *See also* Orlando Food Corp., 140 F.3d at 1440 ("Only after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise.") (citation omitted).

The relevant GRIs here are GRI 1 and GRI 3. The parties disagree as to their application to the Projectors in the cross-motions at bar.

### A. Projectors as Dolls with "Parts and Accessories" vs. "Other Toys"

#### 1. GRI 1

Although Customs classified the Projectors pursuant to *GRI 3(b)*, the Government argues for the first time here that the Projectors actually can be classified as "dolls" under heading 9502 pursuant to *GRI 1* instead.[6] *Compare* HQ 957636 (Oct. 11, 1995) *and* HQ 957688 (Oct. 11, 1995) *with* Memorandum In Support of Defendant's Motion to Dismiss and In Opposition to Plaintiff's Motion for Summary Judgment and In Support of Defendant's Cross-Motion for Summary Judgment

---

[6]The Government's change of position is discussed at somewhat greater length below. *See* section III.A.2, *infra*.

("Defendant's Brief") at 18-19, 24-26 *and* Memorandum In Reply to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment ("Defendant's Reply Brief") at 12-15.

Toy Biz responds that, even if the Projector figures represent humans, the Projectors cannot be classified under heading 9502, because the projector mechanism renders the Projectors "more than" dolls. *See* Plaintiff's Brief at 10-11; Plaintiff's Reply Brief at 15. Under the "more than" doctrine, created by the courts and applied in a line of cases under the Tariff Schedules of the United States ("TSUS"),[7] goods which constitute "more than" a particular article – because they possess additional significant features or perform additional nonsubordinate functions – are not classifiable as that article. *See*, *e.g.*, Digital Equip. Corp. v. United States, 889 F.2d 267, 268 (Fed. Cir. 1989).

However, the "more than" doctrine has been subsumed by the GRIs, and therefore does not apply where – as here – classification is governed by the HTSUS. *See*, *e.g.*, JVC Co. of Am. v. United States, 234 F.3d 1348, 1353-54 (Fed. Cir. 2000) (deciding the viability of the "more than" doctrine under the HTSUS as "an issue of first impression" and expressly "settl[ing] [it] . . . for the benefit of future adjudication of classification cases"). Accordingly, Toy Biz's reliance on the "more than" doctrine is unavailing.

That is not to say that the Government's reliance on GRI 1 is well-founded. The Government maintains that the presence of the projector mechanism is entirely compatible with the Projectors' classification as "dolls." *See generally* Defendant's Brief at 24; Defendant's Reply Brief at 12-15. The Government emphasizes that the Explanatory Notes to heading 9502 provide that the dolls classified under that heading "may be jointed and *contain mechanisms which permit limb, head or*

---

[7]The TSUS is the predecessor of the HTSUS.

*eye movements as well as reproductions of the human voice, etc.*"  *See generally* Defendant's Brief

at 19, 24 *and* Defendant's Reply Brief at 13-14 (*quoting* Explanatory Note 95.02, emphasis added).

The Explanatory Notes further specify that "[*p*]*arts and accessories* of dolls of this heading include:

heads, bodies, limbs, eyes . . ., moving mechanisms for eyes, *voice-producing or other mechanisms*,

wigs, dolls' clothing, shoes and hats."  *See*  Defendant's Brief at 24 *and* Defendant's Reply Brief at

13-14 (*quoting* Explanatory Note 95.02, emphasis added).

  But the Government's attempt to analogize the projector feature to mechanisms such as those

"which permit limb, head or eye movements" or reproduce the human voice is in vain.  The

Government mistakenly characterizes the projector mechanism as "a mechanism [that] produces

voices."  Defendant's Reply Brief at 13-14.  In fact, although some images on the film disks depict

characters "speaking" via dialogue "bubbles" drawn over the heads,[8] the Projectors produce no sound

whatsoever – human voice or otherwise.  *See* Sample "Bishop" and "Dr. Octopus" Projectors.

  Read in context, it is apparent that the "other mechanisms" referred to in the Explanatory

Notes are mechanisms that contribute to a figure's lifelike human simulation.  *See generally* Janex

Corp. v. United States, 80 Cust. Ct. 146, 155-56 (1978) (night light function of "Raggedy Ann and

Andy Nite-timers" – essentially plastic dolls housing night lights – is distinguishable from "features

commonly incorporated in dolls as mechanisms that create tears, cause the arms or legs to move,

produce a voicelike sound, or otherwise contribute to a lifelike simulation").

---

[8]For example, the film disks included with the sample "Bishop" Projector depict action scenes in which "Bishop" is portrayed as exclaiming "Run, run!" and "I'll find you!"  *See* Sample "Bishop" Projector (with disk).

The projector mechanism cannot be said to contribute to the Projectors' lifelike human simulation. Clearly, human beings do not project film images from their chests. As Customs properly ruled, the Projectors are composite goods – consisting of two components, a figure and a projector mechanism – which cannot be classified pursuant to GRI 1.

## 2. GRI 3

GRI 3 governs the classification of goods – including composite goods – that are *prima facie* classifiable under two or more headings. In such cases, GRI 3 requires that:

(a)     The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the . . . composite goods . . ., those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

(b)     . . . [C]omposite goods . . . made up of different components . . . which cannot be classified by reference to 3(a), shall be classified as if they consisted of the . . . component which gives them their essential character . . .

(c)     When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.

GRI 3(a) is thus known as the rule of "relative specificity"; GRI 3(b) reflects the "essential character" test; and GRI 3(c), the default rule, provides for classification by "numerical order." The Explanatory Notes specify that these three methods of classification "operate in the order in which they are set out in the Rule," so that "Rule 3(b) operates only if Rule 3(a) fails in classification, and if both Rules 3(a) and (b) fail, Rule 3(c) will apply." Explanatory Note to GRI 3(I).

The parties agree that the Projectors are "composite goods." *See*, *e.g.*, Plaintiff's Reply Brief at 16-17; Defendant's Reply Brief at 13, 16 n.5, 17. However, in its briefs filed with the Court, the Government has raised for the first time an argument that GRI 3 is not applicable here because, the Government now suggests, the Projectors are not *prima facie* classifiable under two or more headings. *See* Defendant's Brief at 17-18, 25-26; Defendant's Reply Brief at 15-16.

The Government's new argument is premised on its view that the various potentially relevant headings are mutually exclusive. It reasons that the application of GRI 3 in such a case would violate GRI 1's mandate to classify goods "according to the terms of the headings and any relevant section or chapter notes." GRI 1. *See generally* Defendant's Brief at 17-18, 25-26; Defendant's Reply Brief at 15-16.

The Government points out, for example, that the Explanatory Notes state that heading 9503 captures "[a]ll toys *not included* in *headings 95.01* and *95.02*," so that heading 9503 is a "basket" (residual) provision which covers "other toys." *See* Explanatory Note 95.03(A) (emphasis in original). The Government therefore concludes that the Projectors cannot be *prima facie* classifiable under both heading 9502 (for the figure) and 9503 (for the projector mechanism), because the two headings are assertedly mutually exclusive. *See generally* Defendant's Brief at 17-18, 25-26; Defendant's Reply Brief at 15-16.

Similarly, the Government asserts that, since projectors are classifiable under heading 9008 (which covers "[i]mage projectors"), "the competing tariff provision[s]" for classification of the Projectors would be headings 9502 and 9008 – not headings 9502 and 9503.[9] *See* Defendant's Reply Brief at 16 n.5. But again, the Government points out that Note 1(ij) to Chapter 90 excludes from classification under Chapter 90 articles that are classifiable under Chapter 95. Thus, the Government reasons, because the two provisions are mutually exclusive, the Projectors cannot be *prima facie* classifiable under both heading 9502 (for the figure) and 9008 (for the projector mechanism). *Id.*

There are at least three problems with the Government's new argument. First, it cannot be reconciled with Customs' position at the administrative level. In ruling on Toy Biz's protest, Customs clearly applied the "essential character" test of GRI 3(b) to the Projectors. Customs ruled:

> We consider each X-Men Projector to be a *composite article* (consisting of a figure and a projector) . . . Each article's *essential character* is imparted by the doll or toy animal/creature component.

---

[9]Heading 9008, HTSUS, in its entirety, covered "[i]mage projectors, other than cinematographic; photographic (other than cinematographic) enlargers and reducers; parts and accessories thereof." The related Explanatory Notes provide that the "instruments of this heading are designed for projecting still images." *See* Explanatory Note 90.08(A).

Because the parties differ in their proposed classifications for the projector component (with the Government asserting that it is properly classifiable under heading 9008, while Toy Biz asserts that it is classifiable under heading 9503), the parties also differ in their view of the competing headings for the Projector as a whole. Moreover, although the Customs rulings implicitly acknowledge the existence of two competing headings, they do not expressly identify how Customs would have classified the projector component alone. *See* HQ 957636 (Oct. 11, 1995); HQ 957688 (Oct. 11, 1995).

In any event, because the proper classification of the projector component is material (if at all) only if it is determined that the projector feature imparts to the Projectors their "essential character," the ultimate disposition of the pending motions (below) renders it unnecessary to reach the issue of the classification of the projector component at this time.

HQ 957636 (Oct. 11, 1995) (emphases added). *See also* HQ 957688 (Oct. 11, 1995) (same). By the express terms of GRI 3 (as discussed above), Customs could not have reached GRI 3(b) if it had not first determined that the Projectors were *prima facie* classifiable under at least two headings.[10]

Second, the Government's precise position is less than clear. In support of summary judgment, the Government agreed with Toy Biz that "[d]efendant's position regarding the classification of the imported items [including the Projectors] is reflected in the . . . rulings issued by U.S. Customs Service," including HQ 957636 (Oct. 11, 1995) and HQ 957688 (Oct. 11, 1995) – the Customs rulings classifying the Projectors under GRI 3(b). *See* Plaintiff's Statement of Material Facts ¶ 6; Defendant's Response to Plaintiff's Statement of Material Facts ¶ 6. The Government thus seemed to endorse Customs' classification of the Projectors pursuant to GRI 3(b).

In contrast, the Government's opening brief seemed to argue unequivocally that the Projectors are not *prima facie* classifiable under two or more headings, and therefore cannot be classified under GRI 3. *See* Defendant's Brief at 17-18, 25-26. But, even then, the brief gave no indication that the Government recognized that it was repudiating Customs' position. Indeed, the brief made no reference to the basis for Customs' classification of the Projectors, much less proffer an explanation for the apparent reversal of position, or expressly "confess error." *Id*. And the

_____

[10]*See generally* Plaintiff's Reply Brief at 14 (noting that Government's claim that GRI 3 is not applicable is "at variance with the position it has previously, repeatedly, taken," and pointing out that, at the administrative level, Customs classified the Projectors under GRI 3(b) ).

Although Toy Biz takes pains to highlight the Government's apparent efforts to disavow Customs' basis for classifying the Projectors, Toy Biz has stopped short of arguing that the Government is prohibited from affirmatively espousing a theory of classification that differs so fundamentally from Customs' rationale. *Id*.

Government's reply seemed to temper the position taken in its opening brief – appearing, at least in some places, to treat its new argument in opposition to the application of GRI 3 as an alternative or "fallback" position.[11] *Compare* Defendant's Brief at 17-18, 25-26 *with* Defendant's Reply Brief at 15-16 (where, *e.g.*, the Government asserts that its opening brief "did not depart from our prior position regarding the classification of [the Projectors] pursuant to GRI 3(b)").   Indeed, the Government's final words on the subject can be read to endorse the classification of the Projectors "based upon the essential character of the good," an argument the Government characterizes as "consistent with" GRI 3(b). *See* Defendant's Reply Brief at 17.

Finally, the Government cited no case law in support of its new "mutual exclusivity" argument, in either of its briefs. *See* Defendant's Brief at 17-18, 25-26; Defendant's Reply Brief at 16-17. Toy Biz reasons simply that "[w]hile it is true that a figure cannot be classifiable as both a doll and a non-human creature (toy), it does not follow that an item cannot be a composite article consisting of a doll portion and a toy portion." Plaintiff's Reply Brief at 16-17.

While, at first blush, there is a certain appeal to the seeming logic of the Government's new argument, it merits close scrutiny. Better Home Plastics includes what is perhaps the most thoughtful and comprehensive analysis of an argument similar to Government's "mutual exclusivity"

---

[11]It is not clear whether or not the Government intended in its opening brief to disavow Customs' rationale for the classification of the Projectors. But the rather more muted argument in the Government's Reply may be the result of Toy Biz's Reply Brief, which cast the spotlight on the Government's change of position. Specifically, Toy Biz intimated that the Government's new antipathy for GRI 3 is a tacit acknowledgment that the proper application of GRI 3 will not sustain the classification of these Projectors as "dolls." *See* Plaintiff's Reply Brief at 14 ("Defendant, apparently recognizing the obvious result of its own earlier reasoning, has now decided to shift gears, and claim that the items are classifiable as dolls under the *eo nomine* principle.").

argument here. *See* <u>Better Home Plastics Corp. v. United States</u>, 20 CIT 221, 916 F. Supp. 1265 (1996), *aff'd*, 119 F.3d 969 (Fed. Cir. 1997).

<u>Better Home Plastics</u> concerned the classification of imported shower curtain sets consisting of a textile outer curtain, an inner plastic magnetic liner, and plastic hooks. Customs had applied GRI 3(c), classifying the merchandise under subheading 6303.92.0000, HTSUS – the subheading for the textile outer curtain. In contrast, Better Home Plastics argued that GRI 3(b) controlled, and that the merchandise should be classified based on the inner plastic liner, under subheading 3924.90.1010, HTSUS.[12]

The Government argued that classification under GRI 3(b) was inappropriate, asserting that the shower curtain sets could not be classified based on the plastic liner because certain Chapter Notes precluded classification of the sets under Chapter 39. Specifically, as the court observed:

> Note 1 to Chapter 39 provides [that] "any reference to 'plastics' . . . does not apply to materials regarded as textile materials of Section XI." Section VII, Chapter 39, Note 1, HTSUS. In addition, Note 2(a) of the same chapter provides that Chapter 39 does not cover "goods of section XI (textiles and textile articles)[.]" *Id*. at Note 2(1).

<u>Better Home Plastics</u>, 20 CIT at 225, 916 F. Supp. at 1268. In short, as the Court put it, the Government argued in that case – much as it has in this case – that "under GRI 1, . . . the prohibition contained in the chapter notes . . . take precedence over an application of GRI 3(b)." 916 F. Supp. at 1268. *Compare* Defendant's Brief at 17-18, 25-26; Defendant's Reply Brief at 15-16.

---

[12]Subheading 6303.92.0000, in its entirety, covered "[c]urtains (including drapes) and interior blinds; . . . [o]ther: [o]f synthetic fibers." HTSUS, subheading 6303.92.0000. Subheading 3924.90.1010, in its entirety, covered "[t]ableware, kitchenware, other household articles and toilet articles, of plastics: [o]ther: [c]urtains and drapes, including panels and valances; . . . [c]urtains and drapes." HTSUS, subheading 3924.90.1010.

The Better Home Plastics court found the Government's argument unpersuasive. The court reasoned that the purpose of exclusions such as those in the Chapter Notes that the Government relied on in that case – like those that the Government cites here – is to ensure that the classification system does not yield absurd or incongruous results. *See* Better Home Plastics, 916 F. Supp. at 1268-69 (discussing Explanatory Note GRI 1(V) and observing that, absent the relevant Chapter Note, a mixture of sodium and chloride (*i.e.*, salt) would be classified as a Chapter 31 fertilizer). The court held that, in contrast:

> The application of GRI 3(b) results in the classification of a set pursuant to the component that imparts the set's essential character, . . . the plastic liner. Under this fiction, the set is to be treated as if it consists wholly of the plastic curtain.

20 CIT at 226, 916 F. Supp. at 1269. As the court explained, the very nature of the "essential character" test of GRI 3(b) ensures that it does no violence to the merchandise being classified:

> Classification of the textile curtain under the provision for plastic goods would not deprive the set of its "plastic" qualities. It is the essential character of the set – derived in part from the plastic's ability to repel water – that denotes the set's utility, purpose, and accordingly, character. Inclusion of the textile curtain with the classification for the plastic liner does little to change the qualities or the basic nature of the set in meeting this purpose.

*Id*.

Accordingly, the court in Better Home Plastics rejected the Government's argument that prohibitions (or exclusions) in Chapter Notes – such as those at issue here – precluded the application of GRI 3(b) to classify the shower curtain set at issue in that case. Applying GRI 3(b) and concluding that the "essential character" of the set was derived from the inner plastic liner, the court held that the set was properly classifiable under Chapter 39, Chapter Notes notwithstanding.

So, too, in this case, the Chapter Notes and Explanatory Notes cited by the Government are no bar to the application of GRI 3.[13]  As Customs here properly ruled, the Projectors are composite goods consisting of two components – a figure and a projector mechanism – which are *prima facie* classifiable under two or more headings.  The Projectors are therefore subject to classification under GRI 3.

### a. GRI 3(a) – "Relative Specificity"

While Toy Biz agrees that the Projectors are composite goods subject to GRI 3, Toy Biz contends that the Projectors can be classified under GRI 3(a).  Accordingly, Toy Biz argues, Customs' resort to GRI 3(b) and its "essential character test" was improper.  *See* Plaintiff's Brief at 9-11; Plaintiff's Reply Brief at 16.

Toy Biz asserts that, even if the Projector figures represent humans, the presence of the projector mechanism justifies the classification of the Projectors as "other toys" under GRI 3(a).  *See generally* Plaintiff's Brief at 9-11; Plaintiff's Reply Brief at 14-17.  Paraphrasing GRI 3(a), Toy Biz

---

[13]Significantly, GRI 1 refers only to *Section* Notes and to *Chapter* Notes.  *See* GRI 1 (classification to be determined according to terms of headings "and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to [the other GRIs that follow]").  The notes of concern in Better Home Plastics were *Chapter* Notes, as are the notes on which the Government here relies vis-a-vis heading 9008.  *See* Better Home Plastics, 20 CIT at 225-26, 916 F. Supp. at 1268; Defendant's Reply Brief at 16 n.5.  However, the notes that the Government cites vis-a-vis heading 9503 are merely *Explanatory* Notes, which are not mentioned in GRI 1.  *See* Defendant's Brief at 17-18, 25-26; Defendant's Reply Brief at 15-16.  While Explanatory Notes "may offer guidance in interpreting subheadings in the HTSUS, they are not considered controlling."  Rocknel Fastener, Inc. v. United States, 267 F.3d 1354, 1360 (Fed. Cir. 2001).  In sum, while even "mutually exclusive" prohibitions in *Chapter* Notes do not bar the application of GRI 3 in cases such as this, the argument on prohibitions in *Explanatory* Notes is weaker still.

reasons that "[s]ince the projector and the figure portions of the [Projectors] are separately classifiable, Customs is required to classify the item under 'the heading which provides the most specific description' rather than under a heading which provides a more 'general description.' " Plaintiff's Reply Brief at 16. Toy Biz concludes that "[u]nder this principle, classification under 9503.90.60 is applicable since this provision encompasses the various features of the item, not only one feature." *Id*.

But Toy Biz ignores the express caveat to GRI 3(a)'s rule of "relative specificity." That caveat, set forth in the second sentence of the GRI 3(a), provides that where – as here – the competing headings "each refer to part only" of the composite good, "those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods." *See* GRI 3(a).

In the motions at bar, Toy Biz assumes for the sake of argument that the figure components of the Projectors would be classifiable as "dolls" under heading 9502. *See* Plaintiff's Brief at 10 ("[t]he issue of whether the figure represents a human or a non-human is irrelevant to the classification of these items"); Plaintiff's Reply Brief at 16 ("[t]he existence of the projector necessarily removes the article from classification within the doll provision [of the HTSUS], *regardless of whether the figure represents a human*") (emphasis added), 17 ("[i]f we assume, *arguendo*, that the figures housing the projectors represent human beings, this in itself does not dictate classification as dolls") (emphasis in original). The projector feature is *prima facie* classifiable under either heading 9008 ("image projector") or heading 9503 ("other toys"). *See*, *e.g.*, Defendant's Reply Brief at 16 n.5 (identifying competing headings as headings 9502 and 9008);

Plaintiff's Reply Brief at 14 (implicitly identifying competing headings as headings 9502 and 9503), 17 (asserting that projector alone would be classifiable under heading 9503).

Whether the competing headings are 9502 and 9503, or headings 9502 and 9008, each refers to "part only" of the Projectors. Accordingly, under GRI 3(a), the competing headings are deemed equally specific, and classification under GRI 3(b) is appropriate.[14]

### b. GRI 3(b) – "Essential Character"

Customs classified the Projectors pursuant to GRI 3(b), applying the "essential character" test of that rule. Specifically, Customs concluded:

> We consider each X-Men Projector to be a composite article (consisting of a figure and a projector) with accessories (consisting of three film disks). *Each article's essential character is imparted by the doll or toy animal/creature component.*

HQ 957636 (Oct. 11, 1995) (emphasis added); HQ 957688 (Oct. 11, 1995) (emphasis added). Because the figure ("doll or toy animal/creature") components of the Projectors here at issue were determined by Customs to represent humans, Customs classified the Projectors as dolls.

The GRIs offer only the most general guidance on the interpretation of the "essential character" test. The Explanatory Notes to GRI 3(b) state simply:

> The factor which determines essential character will vary as between different kinds of goods. It may, for example, be determined by the nature of the material or component, its bulk, quantity, weight or value, or by the role of a constituent material in relation to the use of the goods.

---

[14]Significantly, Toy Biz has pointed to no case where composite goods which were *prima facie* classifiable under two or more headings were classified pursuant to GRI 3(a). Indeed, independent research suggests that there is no such case.

Explanatory Notes to GRI 3(b)(VIII). Nor are there many reported cases on point decided under the HTSUS. Accordingly, the courts have looked to case law under the TSUS for guidance. *See* Better Home Plastics Corp. v. United States, 20 CIT 221, 224, 916 F. Supp. 1265, 1267 (1996), *aff'd*, 119 F.3d 969 (Fed. Cir. 1997).

The challenge in this case, however, is not the relative paucity of case law. Indeed, application of the "essential character" test is, by definition, a fact-intensive analysis. *See, e.g.*, Takashima U.S.A., Inc. v. United States, 16 CIT 1030, 1037, 810 F. Supp. 307, 313 (1992) (referring to "a fact-intensive 'essential character' analysis"); Canadian Vinyl Indus., Inc. v. United States, 76 Cust. Ct. 1, 2, 408 F. Supp. 1377, 1378 (1976) (noting that "[d]iscernment" of "essential character" is not "an exact science"), *aff'd*, 555 F.2d 806 (CCPA 1977). The challenge here is that Customs failed to elaborate on the rationale for its determination that the figure component imparted to the Projectors their "essential character"; and the parties' briefs are virtually silent on the subject as well.

As discussed above, the Government argued that GRI 3 was not applicable, because the Projectors were classifiable under GRI 1. *See* Defendant's Brief at 24-25; Defendant's Reply Brief at 12-15. And Toy Biz argued that GRI 3(b) was not applicable, because the Projectors were classifiable under GRI 3(a). *See* Plaintiff's Brief at 9-12; Plaintiff's Reply Brief at 14-17. In short, the record in this case is virtually devoid of much of the type of argument and evidence generally considered in applying the "essential character" test.[15] While representative samples of the

---

[15]In addition to the representative factors set forth in the Explanatory Notes to GRI 3(b) – "the nature of the material or component, its bulk, quantity, weight or value, . . . [and] the role of a constituent material in relation to the use of the goods," Better Home Plastics listed some other factors to be considered in determining "essential character," including the respective indispensability of the properties of the components of the merchandise, the respective cost of the

merchandise are available, and while they are indeed "potent witnesses" (*see*, *e.g.*, <u>Simod Am. Corp.</u>

<u>v. United States</u>, 872 F.2d 1572 (Fed. Cir. 1989) ), it seems ill-advised to decide this issue without

the benefit of submissions from the parties.  *See*, *e.g.*, <u>Golding Bros. v. United States</u>, 6 CIT 118, 121

(1983) (denying cross-motions for summary judgment and declining to determine "essential

characteristic" of merchandise on incomplete record consisting of "shallow affidavits and . . .

laboratory reports"), *dismissed upon receipt of further evidence*, 9 CIT 48 (1985).

Accordingly, to the extent that the parties' cross-motions seek partial summary judgment on

the argument that the existence of the projector component alone is sufficient to warrant the

Projectors' classification as "other toys" under heading 9503, those motions are denied.  Further

proceedings will be scheduled, as appropriate.

---

components of the merchandise, the basis for a consumer's decision to purchase the merchandise, the respective duration and/or frequency of the use of the components, and the manner in which the merchandise is invoiced.  *See* Explanatory Notes to GRI 3(b)(VIII); <u>Better Home Plastics</u>, 20 CIT at 224-25, 916 F. Supp. at 1267-68.  Other decisions have considered factors such as the manner in which merchandise is marketed and advertised.  *See*, *e.g.*, <u>Dominion Ventures, Inc. v. United States</u>, 10 CIT 411, 413 (1986), and authorities cited there.  The record in this case is essentially barren of evidence on such factors.

Clearly, the figure component of the Projector constitutes the "bulk" of the item, in terms of sheer mass.  *See* Sample "Bishop" and "Dr. Octopus" Projectors.  On the other hand, Toy Biz emphasizes – albeit in another context – that the articles are called "Projectors" and that the word "Projector" is prominently displayed on the packaging of the merchandise.  *See* Plaintiff's Brief at 9; *see also* Sample "Bishop" and "Dr. Octopus" Projectors (in packaging).  But those factors alone are not dispositive.  The Government asserts – although, again, in another context – that the Projector figure retains its play value even if the projector feature is inoperable or broken.  *See* Defendant's Reply Brief at 15.  But the reverse is true as well:   The projector feature – which is housed in the Projector's torso – would still be usable even if the Projector figure were decapitated and dismembered.  Additional evidence and argument are needed to decide this issue.

### B.  Projectors as "Toy Sets"

Toy Biz argues in the alternative that, even if the Projectors represent humans, and even if it is the figure component – and not the projector feature – that gives the Projectors their "essential character," the Projectors nevertheless are classifiable as "[o]ther toys, put up in sets or outfits" ("toy sets"), under subheading 9503.70.80, HTSUS.  *See* Plaintiff's Brief at 11.

The Explanatory Notes define a "set" as "two or more different types of articles (principally for amusement), put up in the same packing for retail sale without repacking.  Simple accessories or objects of minor importance intended to facilitate the use of the articles may also be included." Explanatory Notes at Subheading 9503.70.  *See* Explanatory Notes 95.03(A) (listing examples of toy sets, including "toy arms, tools, gardening sets, tin soldiers, etc." and referring to "[c]ollections of articles, the individual items of which if presented separately would be classified in other headings").

It is not clear from the briefs whether Toy Biz is claiming as a "set" the Projectors themselves (consisting of both a figure and a projector), or the Projector together with the three film disks with which each is packaged.  Neither argument has merit.

The Government assumes that Toy Biz is claiming that the Projector is a "set," in and of itself, and makes short work of the theory.  *See* Defendant's Brief at 26.  As the Government correctly observes, under the definitions and examples of sets in the Explanatory Notes, a Projector itself cannot be considered a "set," but is rather a single composite item consisting of two different components (a figure and a projector).  *Id*.

The better argument for Toy Biz is that the Projectors, together with the film disks, constitute a set. But, as Customs ruled, the film disks in fact are mere "accessories." *See* HQ 957636 (Oct. 11, 1995); HQ 957688 (Oct. 11, 1995).

Note 3 to Chapter 95 provides that "accessories which are suitable for use solely or principally with articles of this Chapter are to be classified with those articles." Note 3 to Section XX, Chapter 95. Because the HTSUS does not define the term "accessory," it is accorded its common and popular meaning. *See*, *e.g.*, Rollerblade, Inc. v. United States, 282 F.3d 1349, 1352 (Fed. Cir. 2002). A standard dictionary definition of "accessory" is "a thing of secondary or subordinate importance." Merriam Webster's Collegiate Dictionary 7 (10th ed. 1997).

An examination of the film disks packaged with the Projectors makes it clear that they are "accessories" within the  dictionary definition of that term. The film disks are designed and sized specifically to fit inside the miniature projector housed within the Projector figure. The film disks are therefore "suitable for use solely or principally" with the accompanying Projector. Note 3 to Section XX, Chapter 95. Further, the film disks have no play value independent of the Projector, and are of secondary or subordinate importance.

Accordingly, contrary to Toy Biz's assertions, the inclusion of film disks with the Projectors does not convert the Projectors into "toy sets." Customs properly treated the film disks as "accessories," which are to be classified with the Projectors. Toy Biz's motion for partial summary judgment classifying the Projectors as "toy sets" is therefore denied, and the Government's cross-motion is granted.

## IV. Conclusion

For the reasons set forth above, the Court denies the parties' cross-motions for partial summary judgment on the argument that the existence of the projector mechanism is alone sufficient to warrant the Projectors' classification as "other toys" under subheading 9503.90.60, HTSUS. In addition, Toy Biz's motion for partial summary judgment classifying the Projectors as "toy sets" under subheading 9503.70.80, HTSUS is denied, and the Government's cross-motion on that issue is granted.

A separate order will be entered accordingly.

_____
Delissa A. Ridgway
Judge

Decided:   July 30, 2002
                New York, New York